OPINION OF THE COURT
 

 Levine, J.
 

 Plaintiff William B. Truelove, Jr., brought this action against his former employer, defendant Northeast Capital & Advisory, Inc., under article 6 of the Labor Law to recover the unpaid balance of a bonus he was awarded in December 1997, payable in quarterly installments through the following year. His complaint alleges that his bonus constituted “wages” within the meaning of Labor Law § 190 (1) and that, following his resignation after the first bonus payment, defendant violated Labor Law § 193 by enforcing an express condition in the bonus plan predicating payment of each quarterly installment on continued employment. We agree with Supreme Court and the Appellate Division that plaintiff’s bonus does not fall within the definition of wages protected by Labor Law article 6.
 

 Defendant, a small investment banking firm, hired plaintiff in June 1996 as a financial analyst in a non-revenue generating position. Plaintiff elected a compensation plan under which he was to receive an annual salary of $40,000 and be eligible to participate in a bonus/profit sharing pool. Plaintiffs offer of employment stated that a “bonus, if paid, w[ould] reflect a combination of the individual’s performance and Northeast Capital’s performance.”
 

 The terms of the bonus plan were further clarified in two memoranda by defendant’s Chief Executive Officer. The memoranda explained that a bonus/profit sharing pool would be established only if the firm generated a certain stated minimum of revenues and that the pool, once established, would be calculated pursuant to a graduated percentage schedule of firm revenues. The memoranda further stipulated that bonus/profit
 
 *223
 
 sharing distributions would be allocated in the CEO’s sole discretion and would be paid in quarterly installments, with each payment contingent upon the recipient’s continued employment at the firm. Employees were required to have an “acceptable” performance rating to participate in the bonus/ profit sharing pool.
 

 At the end of 1997, defendant established a bonus/profit sharing pool of $240,000 based upon firm revenues of approximately $1.6 million for that year. Defendant’s CEO allocated $160,000 of that pool to plaintiff. Defendant paid plaintiff an initial bonus installment of $40,000, but refused to make any further payments after plaintiffs resignation.
 

 Plaintiff brought this suit under Labor Law article 6, alleging that his bonus fell within the definition of wages set forth in Labor Law § 190 (1). Plaintiff claimed that defendant’s failure to pay him the three remaining bonus installment payments for 1997 violated Labor Law § 193, which provides that “[n]o employer shall make any deduction from the wages of an employee, except” under certain limited circumstances not relevant here. Supreme Court granted summary judgment to defendant on the ground that plaintiffs bonus did not constitute wages within the meaning of Labor Law article 6. The Appellate Division affirmed (268 AD2d 648). We granted leave to appeal and now affirm.
 

 Article 6 of the Labor Law sets forth a comprehensive set of statutory provisions enacted to strengthen and clarify the rights of employees to the payment of wages
 
 (see,
 
 Mem of Indus Commr, June 3, 1966, Bill Jacket, L 1966, ch 548, at 4). An employer who violates the requirements of Labor Law article 6 is subject to civil liability and criminal penalties
 
 (see,
 
 Labor Law §§ 198, 198-a). The dispositive issue in this case is whether plaintiffs bonus constitutes “wages” within the meaning of the Labor Law.
 

 Although New York has provided statutory protection for workers’ wages for more than a century
 
 (see, People v Vetri,
 
 309 NY 401, 405), the Legislature first defined the term “wages” in the 1966 enactment of Labor Law article 6 (L 1966, ch 548). Labor Law § 190 (1) defines “wages” as “the
 
 earnings
 
 of an employee
 
 for labor or services rendered,
 
 regardless of whether the amount of earnings is determined on a time, piece, commission or other basis” (emphasis supplied). Courts have construed this statutory definition as excluding certain forms of “incentive compensation” that are more in the nature of a
 
 *224
 
 profit-sharing arrangement and are both contingent and dependent, at least in part, on the financial success of the business enterprise
 
 (see, International Paper Co. v Suwyn,
 
 978 F Supp 506, 514;
 
 Tischmann v ITT/Sheraton Corp.,
 
 882 F Supp 1358, 1370;
 
 see also, Magness v Human Resource Servs.,
 
 161 AD2d 418, 419). We arrive at the same conclusion with respect to plaintiffs bonus compensation arrangement.
 

 The terms of defendant’s bonus compensation plan did not predicate bonus payments upon plaintiffs own personal productivity nor give plaintiff a contractual right to bonus payments based upon his productivity. To the contrary, the declaration of a bonus pool was dependent solely upon his employer’s overall financial success. In addition, plaintiffs share in the bonus pool was entirely discretionary and subject to the non-reviewable determination of his employer. These factors, we believe, take plaintiffs bonus payments out of the statutory definition of wages.
 

 Unlike in other areas where the Legislature chose to define broadly the term “wages” to include every form of compensation paid to an employee, including bonuses
 
 (see,
 
 Unemployment Insurance Law [Labor Law] §§ 517, 518), the Legislature elected not to define that term in Labor Law § 190 (1) so expansively as to cover all forms of employee remuneration. We therefore agree with those courts that have concluded that the more restrictive statutory definition of “wages,” as “earnings * * * for labor or services rendered,” excludes incentive compensation “based on factors falling outside the scope of the employee’s actual work”
 
 (Tischmann v ITT/Sheraton Corp., supra,
 
 882 F Supp, at 1370). In our view, the wording of the statute, in expressly linking earnings to an employee’s labor or services personally rendered, contemplates a more direct relationship between an employee’s own performance and the compensation to which that employee is entitled. Discretionary additional remuneration, as a share in a reward to all employees for the success of the employer’s entrepreneurship, falls outside the protection of the statute.
 

 The legislative history of the statute confirms our conclusion. As we previously noted, prior to the recodification of the Labor Law regulating the payment of wages in 1966 (L 1966, ch 548), the statute did not provide a definition of the term “wages.” Then, as now, an employer was subject to both civil and criminal liability for failing to pay “wages” as required by the statute
 
 (see,
 
 former Penal Law § 1272 [the predecessor statute to Labor Law § 198-a]; Labor Law former § 196 [the predecessor
 
 *225
 
 statute to Labor Law § 191]). In
 
 People v Vetri
 
 (309 NY 401,
 
 supra),
 
 this Court had to determine whether “vacation pay” was wages protected by the statute. The Court construed the term “wages” narrowly and held that “vacation pay” did not fall within that term, absent clear statutory language establishing that the Legislature intended otherwise. The Court rejected a broader construction of the term that would have encompassed “all of the benefits, monetary or otherwise, which an employee derives from a master and servant relationship”
 
 (id.,
 
 at 407).
 

 Thereafter, when the Legislature enacted article 6 of the Labor Law in 1966 and provided the first statutory definition of the term “wages,” it intentionally followed Vetri’s restricted view of wages for purposes of civil and criminal liability, specifically excluding from the definition wage supplements such as “health, welfare and retirement benefits, and vacation, separation or holiday pay” (Labor Law § 190 [1], as added by L 1966, ch 548;
 
 see also,
 
 Mem of Indus Commr, June 3, 1966, Bill Jacket, L 1966, ch 548, at 5 [“The bill specifically excludes fringe benefits from the term wages * * * in accord with the holding of the Court of Appeals * * * (in)
 
 People
 
 v.
 
 Vetri”]).
 

 The Legislature subsequently amended the statute in 1972 by removing the wage supplement exclusion and providing certain statutory protections for the kind of fringe benefits commonly found in regular terms of employment
 
 (see,
 
 L 1972, ch 328). Nonetheless, the basic
 
 Vetri
 
 view — which rejected a broad view of wages as encompassing “all of the benefits, monetary or otherwise, which an employee derives from a master and servant relationship” (309 NY, at 407) — has remained intact throughout the legislative history. That strongly militates against the broad interpretation of “wages” urged by plaintiff.
 

 Finally, we reject plaintiff’s argument that he had a vested right to the bonus payments once defendant declared that a bonus would be paid and calculated the amount of that bonus. In
 
 Hall v United Parcel Serv.
 
 (76 NY2d 27, 36), we held that an “employee’s entitlement to a bonus is governed by the terms of the employer’s bonus plan.” Here, the bonus plan explicitly predicated the continuation of bonus payments upon the recipient’s continued employment status. Because plaintiff resigned shortly after he received his first quarterly payment, he was not entitled to receive the remaining three payments.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 
 *226
 
 Chief Judge Kaye and Judges Smith, Ciparick, Wesley and Rosenblatt concur.
 

 Order affirmed, with costs.