OPINION OF THE COURT
Leonard B. Austin, J.
The instant action was commenced by the filing of the summons and complaint on November 13, 2000 against Central Emergency Physicians, P. L. L. C. (C.E.P.) and Theodore Packy, M.D. (Packy), C.E.P.’s managing director and sole member, for breach of contract, violation of the Labor Law and conversion. Defendants move, pursuant to CPLR 3211 (a), for dismissal of all claims as asserted against Packy, individually, and dismissal of the second and third causes of action against C.E.P.
Plaintiffs, Salvatore Fiorenti, M.D. (Fiorenti) and David Delman (Delman), entered into employment contracts with C.E.P. on January 1, 1996 and June 28, 1996, respectively. Pursuant thereto, plaintiffs agreed to provide emergency room services, as employees, for a compensation package which included bonuses. The contract of each plaintiff provides, in pertinent part:
“4. Compensation
“(b) A bonus amount in addition to the guaranteed hourly rate will be determined by establishing the Relative Value Unit (RVU) of the Employee from billing reports maintained from Medical Data Processing after the operating costs of C.E.P. are deducted. The physician’s RVU shall be divided by the RVU for the total practice and multiplied by the net practice revenues exceeding expenses. Expenses shall include but are limited to physician salaries, leases or purchases of equipment, billing services, malpractice insurance, health insurance for full time physicians, ancillary personnel salaries, director’s remuneration ($52,000.00 per annum), legal and accounting fees and repayment of start up loan ($160,000.00 payable at $10,000.00 per month). The bonus shall be paid bi-annually on *807 June 30th and December 31st on each respective year. The physician, upon request, may inspect the books and records of C.E.P. with regard to the net RVU and expenses.”
The complaint alleges that C.E.P. earned large profits during the period covered by plaintiffs’ contracts and, despite demand therefore, C.E.P. failed to pay the agreed bonus to plaintiffs. Plaintiffs also allege that C.E.P., having sole control of its books and records, fraudulently stated and determined revenue, expenses and profits for the purpose of depriving plaintiffs of their bonus. Plaintiffs further allege that C.E.P. breached its fiduciary obligation owed to plaintiffs by utilizing questionable accounting methods in determining revenue and profits. As a result, plaintiffs contend that C.E.P. wrongfully withheld wages due to plaintiffs by virtue of its failure to pay bonuses as agreed.
In their third cause of action, plaintiffs allege that Packy authorized payment to himself for 1,400 “administration bonus hours” for 1996 through 1998, which was over and above the agreed $52,000 annual stipend for administrative duties. Thus, monies received by Packy for these additional “administration bonus hours” should have been classified as net practice revenues from which plaintiffs’ bonuses were to have been paid. Plaintiffs’ theory of recovery is that Packy’s refusal to return said funds constitutes conversion of plaintiffs’ property.
First Cause of Action — Breach of Contract
Packy moves to dismiss the first cause of action, sounding in breach of contract, pursuant to CPLR 3211 (a) (1), (5) and (7). Plaintiffs respond that the complaint does not allege a cause of action against Packy individually for breach of contract. Thus, the branch of defendants’ motion seeking dismissal of the cause of action for breach of contract against Packy is denied as moot. Plaintiffs concede that the claim for breach of contract is properly interposed against C.E.P. only. Plaintiffs shall be bound by such concession. In any event, the complaint is insufficient to state a cause of action against the sole shareholder of C.E.P., a corporate entity.
Second Cause of Action — Labor Law
The second cause of action alleges a violation of the Labor Law in that C.E.P. wrongfully withheld wages from plaintiffs in not paying bonuses due for calendar years 1996 through 1998.
The term “wages,” as defined in Labor Law § 190 (1), includes “the earnings of an employee for labor or services rendered, *808 regardless of whether the amount of earnings is determined on a time, piece, commission or other basis.”
Defendants argue that the bonus provision constitutes an incentive compensation plan which is dependent on the profitability of the employer and, thus, is not wages within the contemplation of the statute. Defendants rely on the recent Court of Appeals decision in Truelove v Northeast Capital & Advisory (95 NY2d 220 [2000]). In Truelove, the Court of Appeals found that a bonus scheme, the payment of which was within the employer’s discretion, predicated upon a combination of individual performance and corporate performance, and then based on the firm generating a set amount of revenue and establishing a bonus/profit sharing pool, was not a wage within the contemplation of the Labor Law. In so finding, the Court of Appeals stated:
“The terms of defendant’s bonus compensation plan did not predicate bonus payments upon plaintiffs own personal productivity nor give plaintiff a contractual right to bonus payments based upon his productivity. To the contrary, the declaration of a bonus pool was dependent solely upon his employer’s overall financial success. In addition, plaintiffs share in the bonus pool was entirely discretionary and subject to the non-reviewable determination of his employer. These factors, we believe, take plaintiffs bonus payments out of the statutory definition of wages.” (95 NY2d, at 224.)
It follows that a compensation scheme which is predicated upon an employee’s personal productivity and the objective success of the venture — not the employer’s discretion or any subjective standard — is a contractual right of the employee. (See, Tischmann v ITT/Sheraton Corp., 882 F Supp 1358 [SD NY 1995] [bonus plan which is contingent on the financial success of the business does not constitute wages as defined in Labor Law § 190 (1)].) Here, the right to a bonus may fall within the ambit of the protection of employees provided in article 6 of the Labor Law since the contracts, under paragraph 4 (b), apply an objective standard for the payment of a bonus and are not subject to either the employer’s discretion or the success of the enterprise. (See, e.g., P & L Group v Garfinkel, 150 AD2d 663 [2d Dept 1989]; Hall v United Parcel Serv., 76 NY2d 27 [1990].)
The employment contract at bar states that “[a] bonus amount in addition to the guaranteed hourly rate will be *809 determined [and] [t]he bonus shall be paid” based upon a set formula. The formula for the amount of the bonus takes into account the employee’s personal productivity. Productivity is based on the individual’s proportional contribution to the overall billing of C.E.P., less operating expenses. As a safeguard, the employee has the right to inspect the books and records of C.E.P. as they relate to the employee’s individual billing and the expenses. The standard to be applied for entitlement to a bonus is objective and not subject to C.E.P.’s discretion or whim.
Accordingly, this court holds that a valid cause of action for wages as against C.E.P. is stated in the second cause of action. The motion to dismiss as to this theory or recovery must be denied.
Third Cause of Action — Conversion
The third cause of action sounds in conversion and is asserted against both C.E.P. and Packy, individually. In support of this claim, plaintiffs allege that Packy, in addition to the agreed stipend for 1996, 1997 and 1998 of $52,000 for administrative duties, received during that same period of time payment for approximately 1,400 “administrative hours” at the rate of $90 per hour or approximately $126,000. There is no contractually based entitlement to the additional administrative fees. Plaintiffs claim that the “administrative fee” was a sham to permit the reduction of the “net practice revenue” from which plaintiffs’ bonuses were to be paid so as to negate their bonuses. By taking such extra fees, plaintiffs claim defendants converted a portion of a specific fund to which they were entitled under the contract.
On a motion pursuant to CPLR 3211 (a) (7), the court is limited to ascertaining whether the pleadings state a cause of action, and may not consider whether there is evidentiary support for the complaint. (Guggenheimer v Ginzburg, 43 NY2d 268 [1977].) The allegations are liberally construed in the light most favorable to the plaintiff, and factual allegations are presumed true and are afforded every favorable inference. (Id.)
Conversion is the wrongful “exercise of the right of ownership over [something] belonging to another to the exclusion of the owner’s rights.” (Peters Griffin Woodward v WCSC, Inc., 88 AD2d 883 [1st Dept 1982]; see also, Employers’ Fire Ins. Co. v Cotten, 245 NY 102 [1927].) Money may be the subject of an action in conversion. (Id.)
An action for conversion of money will lie when there is “a specific identifiable fund and an obligation to return or *810 otherwise treat in a particular manner the specific fund in question.” (Manufacturers Hanover Trust Co. v. Chemical Bank, 160 AD2d 113, 124 [1st Dept 1990].) The money must be “specifically identifiable and segregated” (id., at 124 [a wire transfer to a specific account in a specific amount was sufficiently identifiable and segregated to permit an action in conversion]; see also, High View Fund v Hall, 27 F Supp 2d 420 [SD NY 1998]; Melnick v Sable, 11 AD2d 1075 [2d Dept 1960] [deposit delivered to corporate defendant in anticipation of purchase of business with the understanding that the money will be returned if the transaction was not consummated sufficiently identifiable to support an action for conversion]).
Where, in contrast, “the allegedly converted money is incapable of being ‘described or identified in the same manner as specific chattel’ * * * it is not the proper subject of a conversion action.” (9310 Third Ave. Assocs. v Schaffer Food Serv. Co., 210 AD2d 207, 208 [2d Dept 1994]; see also, Interior by Mussa v Town of Huntington, 174 Misc 2d 308 [App Term, 2d Dept 1997]; High View Fund v Hall, supra; 23 NY Jur 2d, Conversion, § 12, at 218 [1982 ed].)
To sustain an action for conversion of an identifiable sum of money plaintiff must allege that he had ownership, possession or control of the money which is the subject of the action. (See, City of New York v 611 W. 152nd St., 273 AD2d 125 [1st Dept 2000]; Peters Griffin Woodward v WCSC, Inc., supra.) Plaintiffs must show that they had “an immediate superior right of possession to the identifiable fund and the exercise by defendants of unauthorized dominion over the money in question to the exclusion of plaintiff’s rights.” (Bankers Trust Co. v Cerrato, Sweeney, Cohn, Stahl & Vaccaro, 187 AD2d 384, 385 [1st Dept 1992].)
Here, the court finds the fund that remained after the expenses were paid from the gross expenses is sufficiently identifiable and segregated such that it may be the subject of an action in conversion. In sum, the fund is the remainder of the proceeds for an identified period of time after the payment to Packy of $52,000 per year, as agreed, for administrative duties. Further payments for additional “administrative hours” were not contemplated in the contract. Packy’s refusal to return same, in this context, satisfactorily pleads the required elements for conversion.
Accordingly, it is ordered that defendants’ motion seeking an order dismissing the first cause of action as against defendant, *811 Theodore Packy, individually, is denied as moot; and it is further ordered that defendants’ motion to dismiss the complaint and each cause of action therein is in all respects denied.