[814 NYS2d 617]

Martin Guiry, Appellant, v Goldman, Sachs & Co., Respondent.

First Department, May 18, 2006

**APPEARANCES OF COUNSEL**

*Vladeck, Waldman, Elias & Engelhard, P.C.*, New York City (*Kevin T. Mintzer, Debra L. Raskin* and *Gillian Thomas* of counsel), for appellant.

*Sullivan & Cromwell LLP*, New York City (*Theodore O. Rogers, Jr.* and *Jessica M. Klein* of counsel), for respondent.

## OPINION OF THE COURT

FRIEDMAN, J.

Article 6 of the Labor Law regulates certain aspects of the payment of "wages" (Labor Law § 190 [1]), and prohibits making an employee's right to receive such "wages" contingent on his or her continued employment at the scheduled time of payment. The sole issue on this appeal is whether plaintiff, formerly a highly paid employee of a financial services corporation, has a claim under Labor Law article 6 to recover for the loss, upon the termination of his employment, of unvested, contingent rights to equity-based compensation—specifically, restricted shares of the employer's stock, and options to purchase such stock. For the reasons discussed below, we hold that deferred equity-based compensation of this kind constitutes, as a matter of law, "incentive compensation . . . not included in the definition of 'wages' under Labor Law § 190 (1)" (*Marsh v Prudential Sec.*, 1 NY3d 146, 154 [2003], citing *Truelove v Northeast Capital & Advisory*, 95 NY2d 220, 224 [2000]). Accordingly, we affirm the dismissal of plaintiff's cause of action brought under Labor Law §§ 191 and 193.[1]

From May 1993 to June 2002, plaintiff worked as an account executive in the Private Client Services Group at defendant Goldman, Sachs & Co. (Goldman). Plaintiff alleges that, as a Goldman executive, it was his role to advise wealthy Goldman clients and manage their financial assets. By plaintiff's own account, Goldman paid him very well. From 1996 through December 17, 1999, when he was compensated on an all-cash, commissions-only basis, his total compensation was approximately $400,000 for 1996, $654,000 for 1997, $877,000 for 1998, and $952,000 for 1999. Even after December 18, 1999, when plaintiff's compensation was divided into three components (commission, "subjective" and equity-based), his cash commis-

---

**1.** The conclusion that the deferred equity-based compensation at issue does not constitute "wages" within the meaning of Labor Law article 6 would remain the same even if plaintiff were within the class of persons protected by article 6. Thus, unlike the dissent, we see no need to determine whether plaintiff was a "supervisory, managerial, executive or administrative" employee excluded from the category of "commission salesman" covered by article 6 (Labor Law § 190 [6]). We express no opinion as to whether, if it were necessary to determine plaintiff's status under article 6, further evidentiary proceedings would be required to resolve that question.

sion income (paid on a monthly basis) remained quite high: $1,174,000 in 2000; $787,000 in 2001; and $325,000 in his six months of employment in 2002.

Immediately before Goldman terminated his employment on June 28, 2002, plaintiff held unvested, contingent rights to "Restricted Stock Units" (RSU's) of Goldman shares, and unvested options to purchase Goldman stock. These contingent rights had been awarded as the equity-based component of plaintiff's compensation for 2000, 2001 and 2002. It is both undisputed and established by documentary evidence in the record that, under the relevant contractual terms (to which plaintiff agreed in writing), the vesting of plaintiff's rights to the RSU's and the stock options was contingent on his continued employment by Goldman on the scheduled vesting date. To reiterate, the question presented is whether these unvested rights to equity-based compensation constitute "wages" within the meaning of article 6 of the Labor Law.

In pertinent part, Labor Law § 190 (1) defines the term "wages," as used in Labor Law article 6, to mean "the earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis." In *Truelove v Northeast Capital & Advisory* (95 NY2d 220 [2000], *supra*), the Court of Appeals held that a discretionary bonus awarded from a bonus pool whose declaration depended on the "employer's overall financial success," rather than on the "personal productivity" of the employee, was outside the statutory definition of wages (*id.* at 224), and therefore payment of installments of such bonus could be made contingent on continuing employment. In coming to this conclusion, the Court noted its agreement with prior cases that had construed the statutory definition "as excluding certain forms of 'incentive compensation' that are more in the nature of a profit-sharing arrangement and are both contingent and dependent, at least in part, on the financial success of the business enterprise" (*id.* at 223-224, citing *International Paper Co. v Suwyn*, 978 F Supp 506, 514 [SD NY 1997], *Tischmann v ITT/ Sheraton Corp.*, 882 F Supp 1358, 1370 [SD NY 1995], and *Magness v Human Resource Servs.*, 161 AD2d 418, 419 [1990]).

As the dissent correctly notes, the bonus in *Truelove* is distinguishable in certain respects from the equity-based compensation at issue here. Nonetheless, the *Truelove* decision carries the unmistakable implication that plaintiff's unvested RSU and stock-option rights were not "wages" covered by Labor Law

article 6. In *Truelove*, the Court of Appeals expressly stated that it "agree[d] with those courts that have concluded that . . . [Labor Law § 190 (1)'s] definition of 'wages' . . . excludes incentive compensation 'based on factors falling outside the scope of the employee's actual work' " (95 NY2d at 224, quoting *Tischmann v ITT/Sheraton Corp.*, 882 F Supp at 1370). Deferred awards of stock and stock options, like those at issue here, constitute incentive compensation, since they plainly serve the function of giving employees an incentive to stay with the firm and to maximize the value of the firm's business.

Further, while the nominal dollar value of an RSU or stock-option award at the time it was made was a percentage of plaintiff's total compensation for the year in question, the ultimate value of such equity-based compensation would depend on Goldman's stock price after the rights vested, at the time of the delivery of the RSU's or the exercise of the option. Thus, such compensation bears the hallmark of incentive compensation—its value to the recipient depends on the firm's "overall financial success," not simply on the employee's "personal productivity" (*Truelove*, 95 NY2d at 224).[2] Stated otherwise, the equity-based compensation at issue here lacks the "direct relationship between an employee's own performance and the compensation to which that employee is entitled" (*id.*) contemplated by Labor Law article 6. Indeed, it is always possible that a deferred award of stock or a stock option ultimately will turn out to have no value, in the event the firm fails before the shares are delivered (in the case of a stock award) or in the event the firm's stock price stays below the strike price during the exercise period (in the case of a stock option). Labor Law article 6 was intended to protect wages on which employees depend to support themselves and their families, not supplemental income that may prove worthless when ultimately received.

In support of its view that an issue of fact exists as to whether plaintiff's equity-based compensation constituted "wages" within the meaning of Labor Law § 190 (1), the dissent states that "whether payments under the plan are discretionary or

---

**2.** Contrary to the dissent's assertion, our decision is not based on any "speculat[ion]" that "payment" of plaintiff's equity-based compensation depends on Goldman's financial performance. Rather, what we find dispositive is that the *value* of such compensation (consisting of deferred rights to stock and options to purchase stock) depends entirely on the price the company's stock will have at the future time the rights in question may be exercised. Obviously, the future value of the company's stock is a variable entirely outside the employee's control. On this point, there is no dispute between the parties.

mandatory cannot be discerned from the documentary evidence." However, even if we assume (in plaintiff's favor) that Goldman had no discretion in determining whether to award equity-based compensation to a given employee in a given year, the equity-based compensation still should not qualify as "wages," in our view, since such compensation served the function of an incentive, and its ultimate value to the employee was "dependent, at least in part, on the financial success of the business enterprise" (*Truelove*, 95 NY2d at 224). Although the cash bonus in *Truelove* was discretionary, *Truelove* nevertheless strongly suggests that compensation having such characteristics does not constitute "wages," whether or not it was discretionary. Finally, since the undisputed facts and documentary evidence in the present record are sufficient to establish the non-wage nature of plaintiff's equity-based compensation as a matter of law, the absence from the record of Goldman's "stock incentive plan" itself should not detain us from resolving the issue at this juncture. Nothing in the stock incentive plan can change the undisputed fact that the values of the RSU's and stock options depend entirely on the market value of a share of Goldman stock at the time in the future such compensation is actually received.

Accordingly, the order of the Supreme Court, New York County (Jane S. Solomon, J.), entered October 6, 2004, which, to the extent appealed from, granted defendant's motion to dismiss plaintiff's first cause of action, should be affirmed, without costs.

Tom, J.P. (dissenting). Plaintiff worked for defendant from May 1993 until his termination on June 28, 2002. The complaint describes the nature of his position with Goldman Sachs as "salesperson" and reveals that he worked with defendant's "Private Client Services (PCS) Group," which is "responsible for developing and managing relationships with wealthy individuals and family groups for the purpose of helping them build and protect their financial assets through equity, fixed income and alternative investments." The complaint adds that plaintiff had "lead responsibility for advising and managing the assets of a very prominent New York family that was a key client of the firm." After Goldman terminated plaintiff, it refused to pay his accrued but unvested interest in company stock and stock options acquired under the firm's stock incentive plan.

The complaint states four causes of action arising out of

plaintiff's termination, alleged to be the result of disability discrimination. At issue on this appeal is the first cause of action arising under Labor Law article 6. It alleges that Goldman made unlawful deductions from the "wages" (Labor Law § 190 [1]) plaintiff earned as a "commission salesman" (Labor Law § 190 [6]), in violation of Labor Law § 193, and that the firm failed to timely pay commissions, both during the course of plaintiff's employment and after his termination (Labor Law § 191 [1] [c]; [3]).

During the time period covered by the complaint, Goldman's "compensation program for PCS professionals" provided for remuneration based on two components, "commissions," which are not contested in this action, and "equity-based." It is plaintiff's position that the equity-based component is includable in his earned commissions and comes within the statutory definition of "wages" (Labor Law § 190 [1]). Goldman maintains that the equity-based component is merely a discretionary payment under an incentive compensation scheme and that plaintiff, a highly paid executive, is removed from the protection of Labor Law article 6 by the exception provided in Labor Law § 190 (6) for persons serving in an executive, managerial or administrative capacity.

A December 1999 memorandum issued by Goldman states that while the commission component was to be earned and paid monthly, the equity-based component was to be "paid under, and subject to the terms and conditions of, the Firm's equity programs." Under the pertinent plan, a portion of the employee's "Target Total Compensation" (an estimate of annual earnings calculated from year-to-date commissions earned by the employee) would be allocated to the equity-based component on a monthly basis. The Target Total Compensation amassed during the year would then be used to determine both the number of restricted stock units or RSU's (each equivalent to one share of Goldman stock) and the number of stock options the employee was eligible to receive. Plaintiff asserts that "the equity-based held back portions of [his] 2000, 2001, and 2002 compensation are 'wages' due to him under Sections 191 and 193" of the Labor Law.

Simultaneously with its answer, Goldman moved to dismiss plaintiff's first cause of action based upon the documentary evidence (CPLR 3211 [a] [1], [5], [7]). In support of its motion, Goldman submitted the award agreements, award summaries and employee signature cards in connection with the awards of RSU's and stock options for the fiscal years 2000 and 2001.

Supreme Court granted the motion and dismissed the first cause of action without reaching the question of whether the disputed equity-based compensation comprises "wages" under the Labor Law. The court reasoned that because plaintiff "exercised independent judgment in advising his clients, and managing their accounts," he falls within the statutory exclusion for "an employee whose principal activity is of a supervisory, managerial, executive or administrative nature" (Labor Law § 190 [6]). Thus, the court concluded, plaintiff is not included within the class of persons protected by Labor Law article 6.

A cause of action is subject to dismissal based upon documentary evidence of record if it " 'conclusively establishes a defense to the asserted claims as a matter of law' " (*Held v Kaufman*, 91 NY2d 425, 431 [1998], quoting *Leon v Martinez*, 84 NY2d 83, 88 [1994]). On its motion, Goldman contended that the contested sums are not "wages," that plaintiff is an "executive" and that plaintiff has no contractual right to the RSU's and stock options under the firm's stock incentive plan.

In the cases cited by Goldman in support of its contention that plaintiff is an executive, the issue was generally decided by reference to the underlying contract of employment (*e.g. Gottlieb v Kenneth D. Laub & Co.*, 82 NY2d 457, 462 [1993] ["contractually due remuneration"]; *Taylor v Blaylock & Partners*, 240 AD2d 289, 292 [1997] [claimed status of commissioned salesperson inconsistent with employment contract]). Since no employment contract has been furnished, the capacity in which plaintiff was hired (whether as a "salesperson" or an "executive") cannot be ascertained, and further proceedings are required to determine plaintiff's employment status (*cf. Conticommodity Servs. v Haltmier*, 67 AD2d 480, 482 [1979]).

Based on the award agreements submitted by Goldman, plaintiff's right to receive the RSU's and stock options is predicated upon his continued employment on the date the respective interests are transferrable. The issue, however, is not whether the contract contains a forfeiture provision but whether that provision is enforceable (*see Mirchel v RMJ Sec. Corp.*, 205 AD2d 388, 389 [1994]), a determination that depends on whether plaintiff's accrued interest in the RSU's and stock options constitutes "wages" within the ambit of Labor Law § 190 (1) or "incentive compensation—such as a bonus" (*Marsh v Prudential Sec.*, 1 NY3d 146, 154 [2003], citing *Truelove v Northeast Capital & Advisory*, 95 NY2d 220, 224 [2000]).

In *Truelove*, the Court of Appeals stated the factors that exempted the employee's incentive compensation from the Labor Law's protection:

> "The terms of defendant's bonus compensation plan did not predicate bonus payments upon plaintiff's own personal productivity nor give plaintiff a contractual right to bonus payments based upon his productivity. To the contrary, the declaration of a bonus pool was dependent solely upon his employer's overall financial success. In addition, plaintiff's share in the bonus pool was entirely discretionary and subject to the non-reviewable determination of his employer" (95 NY2d at 224).

Under Goldman's incentive plan, by contrast, the amount of extra compensation is determined by the employee's productivity, as measured by the amount of commission income earned in preceding months. Furthermore, whether payments under the plan are discretionary or mandatory cannot be discerned from the documentary evidence (*see e.g. Weiner v Diebold Group*, 173 AD2d 166, 167 [1991]). The annual award statements recite that incentives are awarded pursuant to Goldman's stock incentive plan, the terms of which are incorporated by reference. Although it might be dispositive, the stock incentive plan is not contained in the record, and the effect of its provisions cannot otherwise be determined (*cf. D'Amato v Morgan Stanley Dean Witter Discover & Co.*, 268 AD2d 392 [2000]; *Matter of Markby v PaineWebber Inc.*, 243 AD2d 311 [1997]). Thus, Goldman has failed to submit documentary evidence that clearly negates an essential element of plaintiff's cause of action so as to warrant its dismissal (*Kliebert v McKoan*, 228 AD2d 232 [1996], *lv denied* 89 NY2d 802 [1996]; *Weiner*, 173 AD2d at 167).

In *Truelove*, the compensation scheme at issue was held to be an incentive plan based on two factors: (1) payment of the bonus was "entirely discretionary" and (2) payment was not predicated on the employee's "own personal productivity" but "solely upon his employer's overall financial success" (*Truelove*, 95 NY2d at 224). The criterion the majority purports to read into the case— that the *value* of the income payable under the plan be ascertainable based on the employee's performance—is simply not to be found in the Court of Appeals' exposition.

*Truelove* is factually distinguishable from the matter at bar, which meets neither of the enumerated factors. Here, the employee's share of the bonus pool is based directly upon his

projected commissions during the year; thus, the second factor (compensation unrelated to personal productivity) is absent. Moreover, the documentary evidence fails to establish that payment is either discretionary or wholly contingent on the company's financial performance; thus, on this record, the first factor (discretionary and contingent payment) is also lacking. Even if it is assumed that Goldman will ultimately be able to prove that payment of the bonus is "both contingent and dependent, at least in part, on the financial success of the business enterprise" (*id.*), the facts of this case present a novel question: Where the employee's share of a contingent bonus pool is determined by the employee's performance, does the compensation represent wages or an incentive?

The majority speculates, based on missing documentary evidence (Goldman's stock incentive plan), that the amount of the bonus pool is dependent upon the firm's financial performance and concludes that, for this reason alone, the compensation cannot be considered wages. However, to warrant judgment in its favor, it is essential that the documentary evidence clearly negate an essential element of the cause of action (*Kliebert*, 228 AD2d at 232). Having identified no documentary evidence showing that payment of the claimed compensation is contingent on the firm's financial results, Goldman has failed to conclusively establish its defense (*Held*, 91 NY2d at 430-431), even assuming that the applicable law has been correctly construed by the majority.

Goldman moved for dismissal on the record which, as noted, is deficient in a material respect, and the firm's argument that the subject equity awards are not "wages" is unsupported by reference to any New York case. Whatever might be said of the "unmistakable implication" that the compensation at issue is not "wages," extrapolated by the majority from *Truelove*, its disposition is based on facts not in evidence because the provisions of Goldman's stock incentive plan are unknown.

Accordingly, the motion to dismiss plaintiff's first cause of action under Labor Law article 6 should be denied and the first cause of action reinstated.

GONZALEZ and SWEENY, JJ., concur with FRIEDMAN, J.; TOM, J.P., and CATTERSON, J., dissent in a separate opinion by TOM, J.P.

Order, Supreme Court, New York County, entered October 6, 2004, affirmed, without costs.