11-864-cv
Bar-Tur v. Arience Capital Management, L.P.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 3rd day of August, two thousand twelve.

PRESENT:
    DENNY CHIN,
    SUSAN L. CARNEY,
            Circuit Judges,
    STEFAN R. UNDERHILL,
            District Judge.[*]

- - - - - - - - - - - - - - - - - - -x

REBECCA BAR-TUR,
        Plaintiff-Appellant,

            -v.-                          11-864-cv

ARIENCE CAPITAL MANAGEMENT, L.P.,
ARIENCE ASSOCIATES, L.L.C.,
CARYN SEIDMAN-BECKER,
        Defendants-Appellees.

- - - - - - - - - - - - - - - - - - -x

FOR PLAINTIFF-APPELLANT:     TODD A. GUTFLEISCH, Wechsler & Cohen, LLP, New York, New York.

FOR DEFENDANTS-APPELLEES:     LLOYD BLADES CHINN (Anne C. Manolakas, on the brief), Proskauer Rose LLP, New York, New York.

---

[*]     Hon. Stefan R. Underhill, United States District Judge for the District of Connecticut, sitting by designation.

Appeal from a judgment of the United States District Court for the Southern District of New York (Daniels, <u>J.</u>).

**UPON DUE CONSIDERATION**, **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED** in part and **VACATED** in part and the case is **REMANDED** for further proceedings.

Plaintiff-appellant Rebecca Bar-Tur appeals from the district court's February 9, 2011 judgment dismissing her complaint. The district court entered judgment pursuant to its memorandum decision and order also dated February 9, 2011. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

Bar-Tur was a senior analyst and limited partner at defendant-appellee Arience Capital Management, L.P. ("Arience") until her employment was terminated in November 2008. She filed suit in the district court alleging that Arience (1) failed to pay her certain management and incentive fees in breach of her employment agreement and in violation of the New York State Labor Law and (2) terminated her employment for discriminatory and retaliatory reasons in violation of the Americans with Disabilities Act (the "ADA") and state and city law. The district court granted summary judgment in favor of Arience and dismissed all of Bar-Tur's claims.

We review the district court's grant of summary judgment <u>de novo</u>. <u>Wilson v. Nw. Mut. Ins. Co.</u>, 625 F.3d 54, 59-60 (2d Cir. 2010). For summary judgment to be granted, there

-2-

must be "'no genuine issue as to any material fact'" and the movant must be "'entitled to judgment as a matter of law.'" Id. at 60 (quoting Fed. R. Civ. P. 56(a)). In deciding a motion for summary judgment, the court must resolve ambiguities and draw reasonable inferences against the movant and review factual determinations "in the light most favorable to the non-moving party." Id.

We have conducted an independent review of the record in light of these principles and conclude that the district court correctly dismissed Bar-Tur's claims under the New York Labor Law, but that it erred in granting summary judgment with respect to Bar-Tur's breach of contract claim as well as Bar-Tur's discrimination and retaliation claims under the ADA and state and city law.

## 1. New York Labor Law

Bar-Tur's claim that Arience's failure to pay her management and incentive fees violated § 193 of the New York Labor Law fails as a matter of law, as the district court held. The compensation at issue here was a form of "'incentive compensation' . . . more in the nature of a profit-sharing arrangement . . . contingent and dependent, at least in part, on the financial success of the business enterprise." Truelove v. Ne. Capital & Advisory, 95 N.Y.2d 220, 223-24 (2000). Under the plain terms of Bar-Tur's employment agreement, the disputed compensation was tied to Arience's financial success. Hence, it was not covered by the Labor Law.

## 2. **Breach of Contract**

Bar-Tur's employment agreement provided that she would be paid a percentage of incentive fees and incentive allocations "received" by Arience. The district court found that this provision was unambiguous and that Bar-Tur was only entitled to fees and allocations "earned" by the firm during her tenure. In other words, the district court held that "received" meant "earned" and that Bar-Tur was not entitled to a percentage of fees and allocations "earned" before she began her employment at the firm even though the fees and allocations were paid to Arience during her tenure.

While the district court's reading of the employment agreement was entirely plausible, we conclude that the employment agreement was ambiguous in this respect and that Bar-Tur's reading of the agreement -- that she was entitled to a percentage of fees and allocations paid to Arience during her employment even though they were "earned" before she started -- was also plausible. See Revson v. Cinque & Cinque, P.C., 221 F.3d 59, 66 (2d Cir. 2000) ("Ambiguous language is language that is 'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'") (quoting Seiden Assocs., Inc. v. ANC Holdings, Inc. 959 F.2d 425, 428 (2d Cir. 1992)). We remand for the district court to consider any relevant extrinsic

-4-

evidence and to apply the rules of contract construction to ascertain the intent of the parties. <u>See</u> <u>Seiden Assocs.</u>, 959 F.2d at 428 ("Where the language used is susceptible to differing interpretations, each of which may be said to be as reasonable as another, and where there is relevant extrinsic evidence of the parties' actual intent, the meaning of the words become[s] an issue of fact and summary judgment is inappropriate.").

We note also that there is a genuine dispute between the parties as to how the amounts paid to Bar-Tur were calculated. In her reply brief, Bar-Tur raises several discrepancies in the documents Arience apparently used to support its calculations. (<u>See</u> Reply Br. at 7-10). It would appear that further factual inquiry is warranted as to the calculations in question.

### 3. <u>Discrimination and Retaliation</u>

We also conclude that Bar-Tur presented sufficient evidence from which a reasonable jury could conclude that she was demoted or discharged for discriminatory or retaliatory reasons in violation of her rights under the ADA and state and city law.

The district court concluded that "Bar-Tur fails to carry her burden of establishing as a matter of law that her CVID [Common Variable Immunodeficiency] <u>substantially impacts</u> her ability to breath[e], sleep or speak." <u>Bar-Tur v. Arience Capital Mgmt., L.P.</u>, No. 09 Civ. 2653, 2011 WL 565333, at *7 (S.D.N.Y. Feb. 9, 2011) (emphasis in original). On summary judgment, of course, the question was not whether Bar-Tur

"establish[ed]" her claim, id., but whether she presented sufficient evidence to raise an issue of fact for trial. We believe that she did. In opposing the motion for summary judgment, she presented evidence of the following: CVID is a genetically determined primary immunity deficiency that interferes with a patient's ability to produce sufficient antibodies in response to exposure to pathogens, resulting in greater vulnerability to viruses, infections, bronchitis, and pneumonia. The CVID caused Bar-Tur's sleep to be "significantly disrupted." (Bar-Tur Decl. ¶ 20). "Because [she] could not sleep, [her] lack of good health was visible." (Id. at ¶ 21). Her "breathing [was] limited" as she "struggle[d] to breathe," and she regularly suffered from sinus infections and flu-like symptoms. (Id. at ¶ 20).

The district court concluded that Bar-Tur's "moderately active lifestyle weighs heavily against finding that she is substantially limited in her ability to breathe." Bar-Tur, 2011 WL 565333 at *8. While there certainly was evidence in the record that Bar-Tur maintained an active lifestyle, there was also evidence that Bar-Tur's medical condition substantially limited her major life activities of sleeping and breathing. Instead of merely ascertaining whether any issues of fact existed for trial, the district court weighed the evidence and resolved the factual dispute on the motion for summary judgment against the non-moving party. See St. Pierre v. Dyer, 208 F.3d 394, 404

(2d Cir. 2000) ("In ruling on [a summary judgment motion], the court is not entitled to weigh the evidence.").

In addition, Bar-Tur presented evidence from which a rational jury could find that Arience's employment decisions were motivated by her medical condition. The record contained evidence that at the time of her demotion and discharge, Arience employees commented that: (1) Bar-Tur would be able to attend to her "little doctor's appointments" now that she was relieved of certain responsibilities (Bar-Tur Decl. ¶ 37 (quotation marks omitted)); (2) the demotion was "supposed to be a personal opportunity for [Bar-Tur] to take care of some important things in [her] life" (Chinn Decl. Ex. 60); and (3) Arience wanted to give Bar-Tur "space to work through [her] health issues" (Bar-Tur Decl. ¶ 46 (quotation marks and emphasis omitted)).

The district court concluded that even if Bar-Tur's CVID qualified as a disability, the "undisputed record more than establishe[d] that Arience had a legitimate, nondiscriminatory reason for dismissing Bar-Tur," i.e., her work performance. Bar-Tur, 2011 WL 56533 at *8. The record in this respect, however, was disputed, as Bar-Tur presented substantial evidence of her good work performance, including a positive performance review, assurances that she was a "great partner," and numerous complimentary emails about her work.

Finally, as to the retaliation claim, we conclude that there was sufficient evidence in the record to raise an issue for trial. A reasonable jury could find, for example, that (1) on

-7-

November 4, 2008, Bar-Tur sent an email to her supervisor as well as to Michael Gennaro, Arience's chief financial officer and chief operating officer, complaining of her treatment because of her health; (2) she was told to go home approximately an hour and a half later, with her access to Arience's email, voicemail, and computer systems being immediately terminated; and (3) Bar-Tur was formally discharged just two days later. Together, with the other evidence in the record discussed above, the timing and sequence of these events would permit a jury to find a sufficient causal connection to rule in favor of Bar-Tur on her claim of retaliation. This is not a case where timing was the only basis for a claim of retaliation. See Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 95 (2d Cir. 2001); see also El Sayed v. Hilton Hotels Corp., 627 F.3d 931 (2d Cir. 2010) (affirming grant of summary judgment where plaintiff's only evidence of retaliation was temporal proximity).

## CONCLUSION

We have considered the parties' remaining arguments on appeal and find them to be without merit. Accordingly, the judgment of the district court is hereby **AFFIRMED** in part and **VACATED** in part and the case is **REMANDED** for further proceedings with respect to Bar-Tur's breach of contract, discrimination, and retaliation claims.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK