10 N.Y.3d 609 (2008)
891 N.E.2d 279
861 N.Y.S.2d 246
ELAINE PACHTER, Respondent,
v.
BERNARD HODES GROUP, INC., Appellant.
Court of Appeals of the State of New York.
Argued April 23, 2008.
Decided June 10, 2008.
*610 Davis & Gilbert LLP, New York City (Howard J. Rubin, Allie Lin and Laurie E. Morrison of counsel), for appellant.
*611 Gangemi Law Firm, P.C., New York City (Salvatore G. Gangemi of counsel), and O'Hare Parnagian LLP (Robert A. O'Hare Jr. of counsel), for respondent.
Morgan, Lewis & Bockius LLP, New York City (Samuel S. Shaulson of counsel), for Securities Industry and Financial Markets Association, amicus curiae.
*612 Morgan, Brown & Joy, LLP, Boston, Massachusetts (Diane Saunders and Laura M. Raisty of counsel), and McCarter & English, LLP, New York City (Richard P. O'Leary of counsel), for National Retail Federation, amicus curiae.
Chief Judge KAYE and Judges CIPARICK, READ, SMITH, PIGOTT and JONES concur.

OPINION OF THE COURT
GRAFFEO, J.
The United States Court of Appeals for the Second Circuit has certified two questions to this Court concerning the scope of protections afforded by article 6 of the Labor Law. We hold that an "executive" falls within the ambit of the protections afforded to "employees" under sections 190 and 193 of the Labor Law, and that the determination of when a commission is earned is governed by the parties' express or implied agreement.

*613 I
Plaintiff Elaine Pachter was employed as a vice-president for defendant Bernard Hodes Group, Inc. from April 1992 to December 2003. The company specialized in providing recruitment, marketing and staffing services for other businesses. Pachter's primary duties involved arranging for media advertisements for clients. Pachter had the option of receiving a fixed salary but instead chose to be compensated on a commission basis. By availing herself of this incentive arrangement, for many years she was able to earn between $100,000 and $200,000 annually, rather than the $40,000 to $75,000 paid to salaried employees who did similar work.
Pachter's commission earnings were calculated using a formula. When a client of Hodes agreed to a media buy, Hodes would advance payment to the media company and the client would subsequently reimburse Hodes and pay a fee for Pachter's services. When the client was billed, Pachter received a percentage of the amount billed minus particular charges that are central to the dispute in this caseclient receipts were reduced by certain business costs, such as finance charges for late payments, losses attributable to errors in placing advertisements, uncollectible debts and Pachter's travel and entertainment expenses. In addition, she chose to work with an assistant, and half of the assistant's salary was deducted from Pachter's percentage of billings.[1] Each month, Pachter received a commission statement that listed her total billings and the percentage of those billings that represented her gross commission. The expenses attributed to her activities and any advances she had drawn from her commission account were then deducted to reach the net amount of income she had earned for that period. Pachter concedes that she was aware of the charges Hodes subtracted from her gross commissions and acquiesced in the compensation scheme for over a decade.
*614 After Pachter left her employment with Hodes in December 2003, she sued the company in federal court, claiming that Labor Law § 193which prevents employers from making certain deductions from an employee's "wages"prohibited Hodes from subtracting business expenses from her percentage of client billings in arriving at her commission income. Hodes countered that Pachter was an "executive" at the firm and, as such, she was not an "employee" for purposes of sections 190 and 193 of the Labor Law; and, in any event, the deductions were not taken from her commission but were used to calculate her earned commission. The United States District Court for the Southern District of New York granted summary judgment to Pachter, concluding that executives are covered by section 193 and that the adjustments made to Pachter's gross commissions were illegal deductions from wages.[2]
The Second Circuit has certified two questions of law to us regarding the scope of Labor Law article 6 protections. Noting that courts have reached different conclusions as to whether "executives" are embraced by section 190 of the Labor Law, the Second Circuit has requested that we determine whether an executive is entitled to the protections extended to employees in article 6 of the Labor Law. Assuming that executives are employees for the purposes of that statute, we are asked to decide when, in the absence of a written agreement between employer and employee, a commission is "earned" and becomes a "wage" subject to the prohibition on deductions in Labor Law § 193.

II
Article 6 of the Labor Law regulates the payment of wages by employers. Section 190 (2) defines an "employee" as "any person employed for hire by an employer in any employment"a description that plainly embraces executives. Other subdivisions in section 190 address particular classes of employees and explicitly exempt executives. For example, subdivision (6) deals with a "commission salesman," a term that "does not include an employee whose principal activity is of a supervisory, managerial, executive or administrative nature" (Labor Law § 190 [6]). Similarly, the statute defines the phrase "clerical or other worker" to exclude any person employed in an executive capacity who earns more than $600 a week (Labor Law § 190 *615 [7]; see also Labor Law § 190 [5] [excluding executives from the definition of "railroad worker"]).
Hodes argues that, despite the broad definition of "employee" in subdivision (2) of Labor Law § 190, the term is modified by the language in subdivisions (5), (6) and (7) that excludes individuals employed in executive capacities. We disagree. It is evident from the text and structure of article 6 of the Labor Law that executives are employees within the meaning of Labor Law § 190 (2). Although executives are removed from the definitions of certain subcategories of employees in Labor Law § 190 (5), (6) and (7), those provisions are not intended to limit the scope of who qualifies as an "employee" under subdivision (2). Rather, their purpose is to eliminate executives from particular requirements in article 6, such as the frequency of wage payments to manual workers, railroad workers, commission salespersons and clerical or other workers (see Labor Law § 191).
Aside from the structure of Labor Law § 190, Hodes' argument is further undermined by the fact that several provisions in article 6 make specific reference to the exclusion of executives. For example, section 192 (2) removes executives who earn more than $600 per week from the requirement that wages be paid in cash to "any employee" and section 198-c (3) contains a similar exclusion relating to benefits and wage supplements. If, as Hodes claims, executives are not employees in the first instance, these two unambiguous exclusions would be wholly superfluous; there would be no need to eliminate executives from the enumerated subcategories of employees if they were not within the ambit of the general definition of "employee" in subdivision (2) of section 190 (see e.g. Matter of Amorosi v South Colonie Ind. Cent. School Dist., 9 NY3d 367, 373 [2007]). In addition, under the interpretation of "employee" proposed by Hodes, Labor Law § 194 would not prohibit employers from paying similarly situated executives at different rates of compensation solely on account of their genderan absurd proposition that the Legislature surely did not intend.
The Second Circuit recognized that our decision in Gottlieb v Kenneth D. Laub & Co. (82 NY2d 457 [1993], rearg denied 83 NY2d 801 [1994]) has generated a split of authority in state and federal courts on the issue of whether executives are covered by article 6 of the Labor Law (compare e.g. Kaplan v Aspen Knolls Corp., 290 F Supp 2d 335, 340 [ED NY 2003] [executives excluded] and Davidson v Regan Fund Mgt. Ltd., 13 AD3d 117, 118 [1st Dept 2004] [same], with Miteva v Third Point Mgt. Co., *616 L.L.C., 323 F Supp 2d 573, 578-579 [SD NY 2004] [executives included] and Gennes v Yellow Book of N.Y., Inc., 23 AD3d 520, 521 [2d Dept 2005] [same]). We take this occasion to underscore that our decision in Gottlieb was limited to determining whether an employee who asserted a common-law contract cause of action, but did not allege a violation of any substantive provision of article 6, could collect attorney's fees under Labor Law § 198 (1-a). We held that the text, history and purpose of that statute indicated that attorney's fees are available only to plaintiffs who prove a violation of article 6 (see 82 NY2d at 464). We noted that
"[c]ertainly nothing in the language of [the statute as originally enacted] suggests that it was intended to provide any remedy whatsoever for the successful prosecution of a common-law civil action for contractually due remuneration on behalf of employees who in all other respects are excluded from wage enforcement protection under the recodified article 6 of the Labor Law" (id. at 462).
This observation was not intended to signal that executives are outside the reach of article 6. Rather, it merely pointed out that employees serving in an executive, managerial or administrative capacity do not fall under section 191 of the Labor Law and, as a result, those individuals are not entitled to statutory attorney's fees under section 198 (1-a) if they assert a successful common-law claim for unpaid wages. And because the plaintiff in Gottlieb had not alleged that he was protected by section 191, he was presumptively "excluded from wage enforcement protection" under article 6 (id.). Gottlieb thus poses no obstacle to plaintiff's claim in this case.
Consequently, we hold that executives are employees for purposes of Labor Law article 6, except where expressly excluded.[3] The first certified question is therefore answered in the affirmative.

III
Here, plaintiff was paid on a commission basis and a "commission" is considered a "wage" under section 190 (1) of the *617 Labor Law. Section 193 prohibits an employer from making "any deduction from the wages of an employee" unless permitted by law or authorized by the employee for "insurance premiums, pension or health and welfare benefits, contributions to charitable organizations, payments for United States bonds, payments for dues or assessments to a labor organization, and similar payments for the benefit of the employee" (Labor Law § 193 [1] [a], [b]). It is undisputed that the charges Hodes made to determine Pachter's final compensation are not within the categories of permissible deductions delineated in section 193. Their legality therefore depends on when Pachter's commission was "earned" and became a "wage" that was subject to the restrictions of section 193. If the adjustments were made before the commissions were earned, section 193 did not prohibit them; but if the charges were subtracted after her commissions were earned, Hodes engaged in impermissible practices under the statute. Hence, the Second Circuit has asked us to determine when Pachter earned her commissions.
In that the applicable statutearticle 6 of the Labor Law does not provide an answer to this question, we must look to the common law.[4] Under the common law, "`a broker who produces a person ready and willing to enter into a contract upon his employer's terms ... has earned his commissions'" (Srour v Dwelling Quest Corp., 5 NY3d 874, 875 [2005], quoting Feinberg Bros. Agency v Berted Realty Co., 70 NY2d 828, 830 [1987]). This rule is usually addressed in the context of contracts for the sale of real estate and, assuming that it also applies to the sale of goods and services, it is well settled that parties to a transaction are free to depart from the common law by entering into a different arrangement (see e.g. Srour v Dwelling Quest Corp., 5 NY3d at 875; LaneReal Estate Dept. Store v Lawlet Corp., 28 NY2d 36, 42 [1971]; Wagner v Derecktor, 306 NY 386, 390 [1954]). Since the parties "`are free to add whatever conditions they may wish to their agreement'" (Srour v Dwelling Quest Corp., 5 NY3d at 875, quoting Feinberg Bros. Agency v Berted Realty Co., 70 NY2d at 830), they may provide that the computation of a commission will include certain downward adjustments from gross sales, billings or receivables. In that event, the commission *618 will not be deemed "earned" or vested until computation of the agreed-upon formula.
The Second Circuit observed that, under the common-law rule, Pachter's commission arguably could have been "earned" upon the occurrence of one of the following three events: (1) when Pachter's efforts resulted in a client's commitment to buy advertising; (2) when Hodes advanced payment for an advertising buy to a media company; or (3) when the client received an invoice from Hodes. We believe the first event is most consistent with the common-law "ready, willing and able buyer" rule since the commitment of a client signaled its willingness to do business with Hodes. As we have indicated, this does not foreclose the possibility that Pachter and Hodes agreed to a different arrangement.
The lack of a specific written contract is not determinative because the record in this casethe evidence of the parties' extensive course of dealings for more than 11 years and the written monthly compensation statements issued by Hodes and accepted by Pachterprovide ample support for the conclusion that there was an implied contract under which the final computation of the commissions earned by Pachter depended on first making adjustments for nonpayments by customers and the cost of Pachter's assistant, as well as miscellaneous work-related expenses (see n 1 at 613). Notably, Pachter understood the adjustments and acquiesced in themthe District Court found that Pachter consented to the compensation plan and that Hodes complied with it in all respects, thereby establishing that the parties mutually agreed to depart from the common-law rule. This is not surprising: Pachter reaped substantial benefit from the formula, earning a higher annual income than employees on fixed salaries performing similar duties.
We therefore conclude that neither section 193 nor any other provision of article 6 of the Labor Law prevented the parties in this case from structuring the compensation formula so that Pachter's commission would be deemed earned only after specific deductions were taken from her percentage of gross billings. Consequently, we answer the second certified question by stating that, in the absence of a governing written instrument, when a commission is "earned" and becomes a "wage" for purposes of Labor Law article 6 is regulated by the parties' express or implied agreement; or, if no agreement exists, by the default common-law rule that ties the earning of a commission to the employee's production of a ready, willing and able purchaser of the services.
*619 Accordingly, the certified questions should be answered in accordance with this opinion.
Following certification of questions by the United States Court of Appeals for the Second Circuit and acceptance of the questions by this Court pursuant to section 500.27 of the Rules of Practice of the Court of Appeals (22 NYCRR 500.27), and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, certified questions answered in accordance with the opinion herein.
NOTES
[1] Six categories of charges factored into the final computation of Pachter's commission: (1) a 1% or 1.5% finance charge assessed when Pachter did not receive payment from a client within 60 or 90 days; (2) 50% of the costs of Pachter's assistant; (3) 50% to 100% of losses caused when her clients refused to pay for particular advertisements because of errors that occurred in placing or purchasing the ads; (4) 50% of losses attributable to a client's inability to pay its bill; (5) 50% of losses caused by a client's unwillingness to pay for part or all of its bill for reasons other than errors; and (6) Pachter's travel and entertainment expenses, marketing expenses and miscellaneous expenses related to her work, which the company advanced and Pachter was required to repay.
[2] The court awarded Pachter over $150,000, plus interest and attorney's fees.
[3] We reject Hodes' alternative argument that our conclusion should be applied prospectively only (see Gurnee v Aetna Life & Cas. Co., 55 NY2d 184, 192 [1982] ["A judicial decision construing the words of a statute ... does not constitute the creation of a new legal principle"], rearg denied 56 NY2d 567 [1982], cert denied 459 US 837 [1982]).
[4] When a salesperson provides services to a client (as opposed to selling merchandise), section 191-a (b) of the Labor Law provides that the commission is "earned" when it is "due" but the statute does not otherwise explain how to determine when the commission is "due."