STEIN, J.
***103 The issue on this appeal is whether the documentary evidence proffered by defendant Evolution Markets, Inc. on its motion to dismiss pursuant to CPLR 3211(a)(1) conclusively refuted plaintiff Andrew Kolchins's breach of contract claims. We hold that defendant has not met its burden and we, therefore, affirm.
I
Defendant is a corporation that structures transactions and provides brokerage and advisory services in the global environmental and energy commodity marketplace. In 2005, plaintiff joined defendant as a commodities broker and, in 2006, the parties entered into an employment agreement with a three-year term. Subsequently, in 2009, plaintiff and defendant entered into another three-year employment agreement with an "ending date" of August 31, 2012.
Under the 2009 agreement, plaintiff was an "at will" employee; however, if defendant terminated him without "Cause" or he ceased employment for "Good Reason," and he complied with certain restrictive covenants, he would be paid his base salary through the ending date, as well as a "special non-compete payment" thereafter.[1] His compensation package included *786 a $200,000 annual base salary and a "Sign On Bonus" of $750,000. Separately, the agreement set forth terms under which plaintiff was eligible to receive a "Production Bonus" that was "based on [his] performance" each trimester, and which would be "paid within two months of the close of a given trimester."[2]
The 2009 agreement also provided for minimum "Guaranteed Compensation" of $750,000 each contract year. The guaranteed ***104 compensation consisted of plaintiff's "base salary and any bonus paid or payable" to him for such period, but did not include the amount paid as his sign on bonus. In that regard, the 2009 agreement provided that, "[f]or the avoidance of doubt, your bonus to be paid to you in respect of the second trimester of 2009 is not included in the calculation of your guaranteed compensation." However, any special non-compete payment made during the last year of the agreement would "count towards your guaranteed compensation." Critically, the 2009 agreement also set forth that, "in order to be eligible to receive any Production Bonus, bonus from the Discretionary Management Bonus Pool, or Guaranteed Compensation, you must be actively employed ... at the time of our firm-wide bonus payment dates."
On June 15, 2012, as the ending date of the 2009 agreement approached, defendant's chief executive officer, Andrew Ertel, sent plaintiff an email with the subject line "In writing," which stated that, "[t]he terms of our offer are the same [as the] terms of your existing contract (other than a clarification around the issue of departed members of the team), and include: [a] 3 year term[,] $200,000 base salary[,] $750,000 sign on bonus ... [,] $750,000 per year minimum cash compensation[, and the same] production bonus." He added, "[a]ny further questions, let me know but u[sic] do have your existing contract." One month later, on July 16, plaintiff responded by email with "I accept, pls [sic] send contract," to which Ertel replied, "Mazel. Looking forward to another great run." Following this exchange, plaintiff and defendant's general counsel, Benjamin Zeliger, communicated by email and in person over the ensuing weeks in an unsuccessful attempt to reduce the parties' mutual understanding to a more formal written instrument. Despite these efforts, defendant notified plaintiff, by letter dated September 1, 2012, that his employment had ceased upon the expiration of the 2009 agreement.
Plaintiff then commenced this breach of contract action against defendant, alleging that the parties had entered into a valid and binding contract setting forth the terms of his continued employment with defendant. Plaintiff alleged that the June 15 and July 16 email correspondence with Ertel constituted a written confirmation of the new agreement. Plaintiff also sought to recover amounts allegedly still owed to him under the 2009 agreement, including a special non-compete payment and a final production bonus. He asserted that the ***105 production bonus was vested and earned as of the ending date of the 2009 agreement.
Prior to answering the complaint, defendant moved for, among other things, an order dismissing plaintiff's breach of contract claims pursuant to CPLR 3211(a)(1). In support of its motion, defendant annexed as exhibits the email and letter correspondence between the parties, as well as the parties' prior employment agreements. As relevant here, Supreme Court denied defendant's motion insofar as it *787 sought to dismiss plaintiff's breach of contract claims ( 2013 N.Y. Slip Op.31978[U], 2013 WL 4494380 ).
On defendant's appeal, the Appellate Division, with one Justice dissenting, modified Supreme Court's order by dismissing so much of the breach of contract cause of action that sought to recover a special non-compete payment under the 2009 agreement, and otherwise affirmed ( 128 A.D.3d 47, 8 N.Y.S.3d 1 [1st Dept. 2015] ). The Court held that, according plaintiff the benefit of every possible favorable inference, "one may reasonably find that by the June 15-to-July 16, 2012 email exchange, the parties had entered into an agreement to renew plaintiff's employment for a new three-year term, carrying forward the existing compensation plan under the 2009 employment agreement" ( id. at 60 ). The Court also concluded that the documentary evidence of the additional correspondence submitted by defendant did not "utterly refute" plaintiff's allegations that the parties reached an agreement on the material terms of a contract renewal ( id. at 50 ).[3] With regard to plaintiff's claim seeking payment of a production bonus under the 2009 agreement, the Court held that defendant failed to establish, as a matter of law, that plaintiff was not entitled to the bonus, reasoning that the bonus could constitute wages not subject to forfeiture under Labor Law article 6 (see id. at 64 ).
The Appellate Division granted defendant leave to appeal to this Court, certifying the question of whether its order was properly made.
II
Because this case is before us on a CPLR 3211(a)(1) motion to dismiss, we must "accept the facts as alleged in the complaint as true, accord plaintiff[ ] the benefit of every possible ***106 inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (Leon v. Martinez, 84 N.Y.2d 83, 87-88, 614 N.Y.S.2d 972, 638 N.E.2d 511 [1994] ). Dismissal is warranted only if the documentary evidence "establishes a defense to the asserted claims as a matter of law" ( id. at 88, 614 N.Y.S.2d 972, 638 N.E.2d 511 ). Thus, defendant bears the burden of demonstrating that the proffered correspondence conclusively refutes plaintiff's factual allegations (see Goshen v. Mutual Life Ins. Co. of N.Y. , 98 N.Y.2d 314, 326, 746 N.Y.S.2d 858, 774 N.E.2d 1190 [2002] ).
In considering whether a binding contract exists, "[t]he first step ... is to determine whether there is a sufficiently definite offer such that its unequivocal acceptance will give rise to an enforceable contract" (Matter of Express Indus. & Term. Corp. v. New York State Dept. of Transp. , 93 N.Y.2d 584, 589-590, 693 N.Y.S.2d 857, 715 N.E.2d 1050 [1999] ). In that regard, we recently reaffirmed that our decision in " Brown Bros. presents the template for deciding a case, such as this one, where the issue is 'whether the course of conduct and communications between [the parties have] created a legally enforceable agreement' " ( Zheng v. City of New York , 19 N.Y.3d 556, 571, 950 N.Y.S.2d 301, 973 N.E.2d 711 [2012], quoting Brown Bros. Elec. Contrs. v. Beam Constr. Corp. , 41 N.Y.2d 397, 398, 393 N.Y.S.2d 350, 361 N.E.2d 999 [1977] ). Under Brown Bros. ,
"it is necessary to look ... to the objective manifestations of the intent of the parties as gathered by their expressed words and deeds. In doing so, disproportionate emphasis is not to be put on any single act, phrase or other expression, but, instead, on the totality of all of these, given the attendant circumstances, *788 the situation of the parties, and the objectives they were striving to attain"
(41 N.Y.2d at 399-400, 393 N.Y.S.2d 350, 361 N.E.2d 999). While the courts are charged with interpreting written instruments, "where a finding of whether an intent to contract is dependent ... on other evidence from which differing inferences may be drawn, a question of fact arises" (id. at 400, 393 N.Y.S.2d 350, 361 N.E.2d 999).
Of course, "[i]f an agreement is not reasonably certain in its material terms, there can be no legally enforceable contract" (Cobble Hill Nursing Home v. Henry & Warren Corp. , 74 N.Y.2d 475, 482, 548 N.Y.S.2d 920, 548 N.E.2d 203 [1989] ). This "requirement of definiteness assures that courts will not impose contractual obligations when the parties did not intend to conclude a binding agreement" ( id. ). However, while a "mere agreement to agree, in which a material term is left for future negotiations, is unenforceable"
***107 (Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher , 52 N.Y.2d 105, 109, 436 N.Y.S.2d 247, 417 N.E.2d 541 [1981] ), the "terms of a contract [do not] need [to] be fixed with absolute certainty" to give rise to an enforceable agreement ( Matter of Express Indus. , 93 N.Y.2d at 590, 693 N.Y.S.2d 857, 715 N.E.2d 1050 ; see Cobble Hill , 74 N.Y.2d at 483, 548 N.Y.S.2d 920, 548 N.E.2d 203 ). At the same time, "if the parties to an agreement do not intend it to be binding upon them until it is reduced to writing and signed by both of them, they are not bound and may not be held liable until it has been written out and signed" ( Scheck v. Francis , 26 N.Y.2d 466, 469-470, 311 N.Y.S.2d 841, 260 N.E.2d 493 [1970] ; see Stonehill Capital Mgt. LLC v. Bank of the W. , 28 N.Y.3d 439, 45 N.Y.S.3d 864, 68 N.E.3d 683 [2016] ).
Here, we conclude that, based on all the documentary evidence proffered by defendant, a reasonable fact-finder could determine that a binding contract was formed. Ertel's initial email to plaintiff stated that "[t]he terms of our offer are the same [as the] terms of your existing contract"-apart from "a clarification" concerning an issue that plaintiff characterizes as minor-and outlined the core terms that were included in the 2009 agreement. He added that, if plaintiff had "[a]ny further questions" he should consult his "existing contract." Inasmuch as this email explained that "the terms of the offer" were to be nearly identical to the terms of plaintiff's existing contract, a reasonable factfinder could interpret it as evincing an objective manifestation of defendant's intent to enter into a bargain, such that plaintiff was justified "in understanding that his assent to that bargain [was] invited and [would] conclude it" ( Restatement [Second] of Contracts § 24 [1981] ). Put differently, it could reasonably be inferred that Ertel's email constituted a valid offer by defendant. In response to that email, plaintiff wrote "I accept. pls [sic] send contract," to which Ertel replied, "Mazel. Looking forward to another great run."[4]
*789 Affording plaintiff the benefit of every favorable inference, this exchange-in essence, we "offer" and "I accept," followed by an arguably congratulatory exclamation, coupled with a forward- ***108 looking statement about the next stage of the parties' continuing relationship-sufficiently evinces an objective manifestation of an intent to be bound for purposes of surviving a motion to dismiss.[5] Although Ertel's email referenced one outstanding "clarification," the parties' further communications indicate that such clarification was incorporated into the first draft of the new agreement sent by Zeliger to plaintiff, and no evidence was offered to suggest that plaintiff resisted that change to the terms of the 2009 agreement.
We reject defendant's argument that plaintiff's contract claim should have been dismissed because the additional correspondence defendant proffered in support of its motion to dismiss reflects a lack of mutual assent to material terms-such as plaintiff's minimum guaranteed compensation and the length of the non-compete term-and that this indefiniteness renders the purported contract invalid as a matter of law. As the Appellate Division concluded, that correspondence does not conclusively refute contract formation (see Goshen , 98 N.Y.2d at 326, 746 N.Y.S.2d 858, 774 N.E.2d 1190 ; Leon , 84 N.Y.2d at 88, 614 N.Y.S.2d 972, 638 N.E.2d 511 ). The additional emails reveal gaps in time between the parties' written correspondence, refer to discussions that are not reflected in the record before this Court, and do not include conclusive evidence of material disagreements regarding the terms of the agreement sufficient to negate the initial intent to be bound, as a matter of law. Because it is possible to draw competing inferences based on the totality of the parties' communications as set forth in this record-which does not otherwise reflect that defendant expressly reserved the right not be bound except in a formal written document-defendant has not met its burden to conclusively refute the allegations of the complaint that the parties entered into a new contract.
III
The courts below also correctly denied defendant's motion to dismiss as it relates to plaintiff's claim for a Production ***109 Bonus. As a general matter, "an employee's entitlement to a bonus is governed by the terms of the employer's bonus plan" ( Truelove v. Northeast Capital & Advisory , 95 N.Y.2d 220, 225, 715 N.Y.S.2d 366, 738 N.E.2d 770 [2000] [internal quotation marks and citation omitted] ). However, "[a]rticle 6 of the Labor Law sets forth a comprehensive set of statutory provisions ... [that] strengthen and clarify the rights of employees to the payment of wages" ( Truelove , 95 N.Y.2d at 223, 715 N.Y.S.2d 366, 738 N.E.2d 770 ). As relevant here, Labor Law § 193 prohibits employers from making "any deduction from the wages of an employee," and section 190 broadly defines "wages" as "the earnings of an employee for labor or services rendered, *790 regardless of whether the amount of earnings is determined on a time, piece, commission or other basis." Thus, as the Appellate Division concluded, to the extent plaintiff's production bonus constituted "earned wages" under the Labor Law, it was not subject to forfeiture.
Defendant contends that plaintiff's claim regarding his entitlement to a production bonus for the second trimester of 2012 is barred by the express terms of the 2009 agreement, which provide that, in order to receive the bonus, plaintiff had to be actively employed by defendant at the time all such firm-wide bonuses were paid. Because it is undisputed that he was not so employed when the bonus at issue was paid, defendant maintains that the bonus was never "earned," as a matter of law, under our decision in Truelove . We disagree. The terms of the compensation plan at issue in Truelove did not predicate bonus payments on the plaintiff's personal productivity; rather, the plaintiff's share of the bonus pool was based on his employer's overall financial success, and was entirely discretionary (see 95 N.Y.2d at 224, 715 N.Y.S.2d 366, 738 N.E.2d 770 ). Thus, we concluded that the bonus payments constituted "[d]iscretionary additional remuneration" that was "outside the protection of the statute" ( id. ).
Contrary to defendant's argument here, the terms of the 2009 agreement do not conclusively establish that the production bonus was not vested and earned as of the contract's ending date. That agreement expressly provided that plaintiff was "eligible to be paid a bonus on a trimester basis based on [his] performance. " Although the agreement sets forth a calculation for the "total bonus pool" available as a percentage of net earnings of the renewable energy brokerage desk, plaintiff managed that desk. Significantly, unlike the compensation plan at issue in Truelove , there is language in the 2009 agreement that ***110 could be read as providing that plaintiff's bonus was predicated on his personal productivity, rather than solely on defendant's overall success. Moreover, the language of the 2009 agreement does not conclusively establish that the bonus was discretionary. Indeed, under an earlier employment agreement between the parties, plaintiff was eligible for a similar trimester-based bonus at the "exclusive and sole discretion" of defendant, but that discretionary language was not carried over to the 2009 agreement. Likewise, pursuant to the 2009 agreement, other aspects of plaintiff's compensation package were specifically described as "discretionary," while the production bonus was not.
To the extent the production bonus was not discretionary and, instead, was based only on plaintiff's performance as a manager during his final trimester of employment-a question not conclusively answered by the language of the agreement-the bonus could constitute nonforfeitable "wages." In that event, any provision of the 2009 agreement that would operate to deny plaintiff those wages after they were "earned" based on the timing of payment would be void as against public policy under article 6 of the Labor Law.[6] Therefore, defendant has failed to *791 meet its burden of establishing, as a matter of law, that plaintiff was not entitled to the Production Bonus, and its motion to dismiss on this ground was correctly denied.
Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.
Order affirmed, with costs, and certified question answered in the affirmative.
Chief Judge DiFiore and Judges Rivera, Fahey, Garcia and Wilson concur. Judge Feinman took no part.

The restrictive covenants prohibited plaintiff from, among other things, working for a competitor for six months after his employment with defendant ceased.

Under the agreement, "[t]he total bonus pool available to the Eastern U.S. renewable energy brokerage desk [that plaintiff managed] ... [would] be no less than 55% of the Net Earnings of [that desk]."

In addition, the Court held that "there is no blanket rule by which email is to be excluded from consideration as documentary evidence under [CPLR 3211(a)(1) ] )" (id. at 59 ).

In response to the Appellate Division's interpretation that "[m]azel is an obvious reference to '[m]azel tov' or 'mazal tov,' a Hebrew or Yiddish phrase used to express congratulations for a happy and significant occasion or event" (128 A.D.3d at 59, n.2, 8 N.Y.S.3d 1 ), defendant maintains that the word was merely an expression of luck. The phrase "mazel tov" apparently derives from the "post-biblical Hebrew" words for "good" and "luck" (Oxford English Dictionary [2018], mazel tov). At one time, the word "mazel" referred to a celestial body (see Sidney J. Jacobs, The Jewish Word Book 189 [1982]; Leo Rosten, The Joys of Yiddish 225 [1968] ). However, these aspects of the word were eventually forgotten; ultimately "mazel" came to mean "luck" and "mazel tov" an expression of congratulations (see Leo Rosten, The Joys of Yiddish 225 [1968]; Oxford English Dictionary). Thus, counsel is correct that the literal translation of "mazel" does not necessarily express congratulations. Nevertheless, a fact-finder could reasonably infer that the word was being used here in reference to the congratulatory interjection "mazel tov."

As defendant notes, prior to his July 16 response to Ertel's initial email, plaintiff notified defendant of his intent not to renew the 2009 agreement, which otherwise would have automatically continued for an additional one-year term. Although defendant maintains that this notice constituted a rejection of Ertel's email, a reasonable fact-finder could determine otherwise, on the basis, for example, that plaintiff's decision not to renew the 2009 agreement for a one-year term was consistent with an intent to enter into a new agreement with the same material provisions, including a three-year term.

Defendant also relies upon Pachter v. Bernard Hodes Group, Inc., 10 N.Y.3d 609, 618, 861 N.Y.S.2d 246, 891 N.E.2d 279 (2008) in which the relevant issue was whether the Labor Law prevented the parties from structuring the plaintiff's compensation formula so that her commissions would be deemed earned only after certain deductions were taken from the billings attributable to her. That question is not relevant to the dispute before us. In any event, nothing in Pachter suggests that the parties may agree, in violation of the public policy reflected in the Labor Law, that wages earned and vested before an employee leaves a job will be forfeited if the employee is no longer working for the employer when the employer is obligated to remit payment (see Ryan v. Kellogg Partners Inst. Servs., 19 N.Y.3d 1, 16, 945 N.Y.S.2d 593, 968 N.E.2d 947 [2012] ).