**Irrera v Bernstein Equity Partners, LLC**

2025 NY Slip Op 31734(U)

May 13, 2025

Supreme Court, New York County

Docket Number: Index No. 151494/2023

Judge: Judy H. Kim

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:  **HON. JUDY H. KIM**                    PART                    04

*Justice*

--------------------------------------------------------------------------------X

EDOARDO IRRERA,                                 INDEX NO.          151494/2023

                    Plaintiff,                  MOTION DATE        04/28/2023

                 - v -                          MOTION SEQ. NO.       002

BERNSTEIN EQUITY PARTNERS, LLC and SETH
BERNSTEIN,                                      **DECISION + ORDER ON
                                                MOTION**
                    Defendants.

--------------------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 002) 12, 13, 14, 15, 16, 19, 20, 21, 22, 23, 24, 25, 26

were read on this motion to/for                    DISMISSAL                    .

Upon the foregoing documents, defendants' motion to dismiss the complaint is granted in part.

## FACTUAL BACKGROUND

The following factual recitation is adapted from plaintiff's complaint and taken as true for purposes of this motion. On or about September 2021, plaintiff met with defendant Seth Bernstein ("Bernstein"), the owner and CEO of defendant Bernstein Equity Partners, LLC ("BEP"), a private equity firm (NYSCEF Doc No. 8, amended complaint at ¶¶5, 6, 9). At that meeting, Bernstein represented to plaintiff that BEP had billions of dollars in assets under management (with additional billions in equity commitments from investors for new investments), over thirty employees in offices in the UK, Monaco, Poland and Abu Dhabi, had co-invested capital with prominent asset management firms including Apollo Global Management and Blackstone (*id.* at ¶¶6, 8). Bernstein also provided plaintiff with marketing material reiterating these claims (*id.* at

**151494/2023   IRRERA, EDOARDO vs. BERNSTEIN EQUITY PARTNERS, LLC ET AL          Page 1 of 11**
**Motion No.  002**

1 of 11

[* 1]

¶10). Bernstein offered plaintiff a position at BEP as a Managing Director who would "originate new potential investment opportunities for him and BEP by facilitating meetings with Mr. Irrera's Italian contacts" (*id.* at ¶8).

At the time he met with Bernstein, plaintiff was about to begin working as an executive at Tillman Global Holdings ("Tillman") but after BEP offered plaintiff a base salary higher than his salary and bonus at Tillman, plaintiff signed an employment agreement with BEP on or about October 6, 2021 (the "Employment Agreement") (*id.* at ¶9).

The Employment Agreement provided, in pertinent part:

Your starting base salary will be at an annual rate of $725,000, payable in accordance with the firm's customary payroll practices (currently on a 26 pay period basis). You will be classified as an employee exempt from overtime pay under federal and state overtime laws. Any compensation payments made to you by BEP will be subject to applicable withholdings for federal, state and local laws.

…

As we discussed, employees of the Firm are generally eligible for (but not guaranteed) an annual bonus, the terms, conditions and amount of which are established in the sole discretion of the Firm. We would expect your initial annual bonus to be $500,000 paid annually on December 31st, 2020. In addition, offered is $250,000 equity buy-out of CDP Equity SpA. The breakdown of said payment is $125,000 paid in June 2022 & $125,000 paid in December 2022. In addition, 10% of any BEP transaction fee- i.e. carry transaction, etc. you are a part of will be allotted to you. Lastly, we will provide up to $35,000 to your relocation budget.

…

You will be an employee at will, which means that either you or BEP may end the employment relationship at any time, with or without notice, and with or without reason.

(NYSCEF Doc No. 15, employment agreement [emphasis added])

Plaintiff began working for BEP on November 1, 2021, and soon learned that "nearly all" of Bernstein's representations concerning BEP—including the amount of its assets under management, global scope, and prior investments—were false (*id.* at ¶¶4, 10, 19). Plaintiff

**151494/2023   IRRERA, EDOARDO vs. BERNSTEIN EQUITY PARTNERS, LLC ET AL**
**Motion No.  002**

**Page 2 of 11**

2 of 11

[* 2]

"became increasingly concerned that he was assisting BEP in disseminating false statements to potential counterparts and … [in December 2021] communicated these concerns to Mr. Bernstein and others at BEP and urged them to refrain from communicating false information to third parties" (*id.* at ¶¶21-23). In response, Bernstein began to "freeze [plaintiff] out of his business dealings, often ignoring Mr. Irrera's attempts to communicate with him" and asking plaintiff to "put off a business trip to Italy … de facto preventing [plaintiff] from carrying out his job properly" (*id.* at ¶24). By July 2022, "BEP's CFO, Lance Diamond, phoned [plaintiff] saying that [BEP] was going in a 'different direction' and that unless he had some executable transactions, they wanted to terminate him" (*id.* at ¶24) On August 24, 2022, plaintiff was fired over the phone by Bernstein's executive assistant (*id.* at ¶26). BEP did not pay plaintiff the second $125,000.00 "equity buy-out" bonus payment in December 2022 (*id.* at ¶26).

In his amended complaint, plaintiff asserts claims for: (1) fraudulent inducement based on defendants' intentional misrepresentations of BEP's financial condition on which plaintiff relied in accepting job offer; (2) breach of contract, based upon defendants' failure to make the second $125,00.00 bonus payment under plaintiff's employment agreement; (3) retaliation under Labor Law §740; and (4) Labor Law §§190, 191 and 198.

Defendants now move, pursuant to CPLR 3211, to dismiss the Amended Complaint. Defendants argue that: no fraudulent inducement claim lies because plaintiff fails to plead any fraudulent intent on the part of Bernstein or that plaintiff reasonably relied on the alleged misrepresentations; the breach of contract claim is refuted by the Employment Agreement, which establishes that the $125,000.00 bonus plaintiff seeks was discretionary; no Labor Law §740 claim lies because plaintiff has not alleged a specific violation by defendants or a causal connection between his "whistleblowing" and dismissal eight months later; and plaintiff's Labor Law Article

**151494/2023 IRRERA, EDOARDO vs. BERNSTEIN EQUITY PARTNERS, LLC ET AL**
**Motion No. 002**

**Page 3 of 11**

3 of 11

6 claims are entirely conclusory. Finally, defendants argue that these claims must be dismissed against Bernstein individually because plaintiff has failed to allege facts supporting the imposition of alter ego liability.

In opposition, plaintiff maintains that each of his claims are sufficiently pled. He also submits an affidavit stating:

> In reliance upon the blatantly false representations communicated to me by Mr. Bernstein, I voluntarily resigned my employment with Tillman Global Holdings. But for acceptance of BEP's offer of employment, I would have remained employed by Tillman Global Holdings. I had just accepted an offer of employment with Tillman Global Holdings after voluntarily resigning my employment with CDP Equity.
>
> …
>
> Within days of my specific objections to the fraud communicated directly to Mr. Bernstein, Mr. Bernstein requested that I resign stating, among other things, that it was not a good "cultural fit."
>
> Mr. Bernstein abused BP's corporate form by utilizing BEP to communicate false financial information to prospective business partners. BEP's corporate form bestowed legitimacy to the misrepresentations Mr. Bernstein wanted communicated to BEP's business partners. Most of Mr. Bernstein's representations concerning BEP's financial status and nature were expressly false. Mr. Bernstein is the sole owner of BEP.

(NYSCEF Doc No. 22, Irrera aff. [emphasis added]).

## DISCUSSION

On a motion to dismiss pursuant to CPLR 3211(a)(1), "[d]ismissal is warranted only if the documentary evidence submitted utterly refutes plaintiff's factual allegations and conclusively establishes a defense to the asserted claims as a matter of law" (*Amsterdam Hosp. Group, LLC v Marshall-Alan Assoc, Inc.*, 120 AD3d 431, 433 [1st Dept 2014] [internal citations and quotations omitted]). On a motion to dismiss pursuant to CPLR 3211(a)(7), the pleading is afforded a liberal construction and the court must accept as true the facts alleged in the complaint, accord the

**151494/2023  IRRERA, EDOARDO vs. BERNSTEIN EQUITY PARTNERS, LLC ET AL**
**Motion No.  002**

**Page 4 of 11**

4 of 11

[* 4]

pleading the benefit of every reasonable inference, and only determine whether the facts, as alleged, fit within any cognizable legal theory (*see Leon v Martinez*, 84 NY2d 83 [1994]).

*Fraudulent Inducement*

Defendants' motion to dismiss plaintiff's fraudulent inducement claim is denied. To state a claim for fraudulent inducement a plaintiff must allege "a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury" (*Laduzinski v Alvarez & Marsal Taxand LLC*, 132 AD3d 164, 167 [1st Dept 2015] [internal citations omitted]).

"An at-will employee, who has been terminated, cannot state a fraudulent inducement claim on the basis of having relied upon the employer's promise not to terminate the contract, or upon any representations of future intentions as to the duration or security of his employment" (*id.* at 168 [internal citations and quotations omitted]). However, "where an at-will employee alleges an injury *separate* and *distinct* from termination of [his] employment, he may have a cause of action for fraudulent inducement" based on allegations "that [he] would not have taken the job in the first place if the true facts had been revealed to [him] (*id.* [internal citations and quotations omitted]).

Plaintiff has satisfied these requirements through allegations that Bernstein knowingly misrepresented the scale and scope of BEP's business, and that plaintiff would not have accepted a position at BEP had he known that these representations were false. Contrary to defendants' claim, Bernstein's alleged statements were misrepresentations of present fact rather than statements of future intentions (*id.* at 169 ["because the promises largely focused on defendant companies' financial health, the motion court erred in concluding that defendants' representations

**151494/2023   IRRERA, EDOARDO vs. BERNSTEIN EQUITY PARTNERS, LLC ET AL**
**Motion No.  002**                                                                                          **Page 5 of 11**

5 of 11

were nonactionable future statements"]). Nor can these alleged misrepresentations be considered "mere puffery" since they described BEP's past business dealings and present status (*see RCM/CMG Portfolio Holding, LLC v Giordano*, 214 AD3d 486, 487 [1st Dept 2023] [false statements of present facts are not "mere puffery, opinions of value or future expectations"]).

Bernstein's fraudulent intent in making these misrepresentations has also been sufficiently alleged. "All that is required to defeat a motion to dismiss a fraud claim for lack of scienter is a rational inference of actual knowledge" (*AIG Fin. Prods. Corp. v ICP Asset Mgt., LLC*, 108 AD3d 444, 446 [1st Dept 2013] [internal quotations omitted]) and the allegation that these misrepresentations were made by BEP's owner and CEO, who is presumably well versed in the operation and finances of his company, permits such an inference (*see Pludeman v N. Leasing Sys., Inc.*, 40 AD3d 366, 367 [1st Dept 2007] ["one can readily deduce, given the corporate positions and titles of the individual defendants, that these individuals actually operate the day-to-day business of corporate defendant, and consequently were involved in or knew about the alleged fraudulent concealment of most of the lease"], *affd*, 10 NY3d 486 [2008]).

Plaintiff has sufficiently alleged in his complaint and affidavit in opposition that he justifiably relied on these statements in accepting the position instead of going to work for Tillman[1] (*see Laduzinski* at 169 [plaintiff sufficiently alleged that "in reliance on [managing director's] misrepresentations, he left his stable and well compensated employment with J.P. Morgan, which brought about a setback in his career"]). Finally, the complaint asserts facts from which damages can reasonably be inferred (*see id.* at 167 [plaintiff "left his stable and well compensated

---

[1] Although the Appellate Division, Second Department has taken a different view on this point (*see Guido v Orange Regional Med. Ctr.*, 102 AD3d 828, 831 [2d Dept 2013] ["The at-will employment doctrine thus bars a cause of action sounding in fraudulent inducement, even where the circumstances pertain to a plaintiff's acceptance of an offer of a position rather than his or her termination"]), this Court must apply the law as promulgated by the Appellate Division, First Department (*see D'Alessandro v. Carro,* 123 AD3d 1, 6 [1st Dept 2014]).

**151494/2023   IRRERA, EDOARDO vs. BERNSTEIN EQUITY PARTNERS, LLC ET AL**          **Page 6 of 11**
  **Motion No.  002**

[* 6]

6 of 11

employment with J.P. Morgan, which brought about a setback in his career"]; *but see Kinsella v Powerguard Specialty Ins. Services, LLC*, 112 AD3d 414 [1st Dept 2013]).

The fraudulent inducement claim is also sufficiently stated against Bernstein individually, given that he allegedly made the misrepresentations at issue (*see American Exp. Travel Related Services Co., Inc. v North Atlantic Resources, Inc.*, 261 AD2d 310, 311 [1st Dept 1999] ["a corporate officer who participates in the commission of a tort may be held individually liable, regardless of whether the officer acted on behalf of the corporation in the course of official duties and regardless of whether the corporate veil is pierced"]; *see also Shugrue v Stahl*, 117 AD3d 527, 528 [1st Dept 2014]).

### *Breach Of Contract*

Defendants' motion to dismiss plaintiff's breach of contract cause of action is granted in part, to the extent that this cause of action is dismissed as against Bernstein. The Employment Agreement is signed by Bernstein in his capacity as CEO of BEP rather than in his individual capacity and plaintiff's conclusory allegations of dominion, control, and wrongdoing are insufficient to meet the "heavy burden" to warrant piercing the corporate veil to hold Bernstein personally liable for any breach of contract by BEP (*see 2497 Realty Corp. v Fuertes*, 232 AD3d 451, 452 [1st Dept 2024] [internal citations omitted]; *see also Remora Capital S.A. v Dukan*, 175 AD3d 1219, 1220 [1st Dept 2019]).

The motion is denied as to BEP, however. To state a claim for breach of contract, plaintiff must allege the existence of a contract between plaintiff and defendants, plaintiff's performance under the contract, defendants' breach of the contract, and resulting damages (*see Harris v Seward Park Hous. Corp.*, 79 AD3d 425, 426 [1st Dept 2010]). Defendants argue that under the Employment Agreement the $125,000.00 bonus that plaintiff seeks was to be paid at BEP's

**151494/2023   IRRERA, EDOARDO vs. BERNSTEIN EQUITY PARTNERS, LLC ET AL**
**Motion No.  002**

**Page 7 of 11**

7 of 11

discretion and therefore its failure to make this payment was not a breach of that agreement. In fact, the Employment Agreement is clear that plaintiff's expected $500,000.00 "annual" bonus *was* to be paid at BEP's discretion but is silent as to whether the $250,000.00 "equity buy out" at issue here was discretionary. Accordingly, the Employment Agreement does not utterly refute the complaint's allegations such that dismissal of this claim is warranted (*see Kolchins v Evolution Markets, Inc.*, 31 NY3d 100, 109 [2018] [employment agreement did not conclusively establish production bonus was discretionary where, inter alia, "other aspects of plaintiff's compensation package were specifically described as 'discretionary,' while the production bonus was not"]). While defendants assert that they were not obligated to make the second equity buy-out payment once plaintiff was termination, the Employment Agreement is also silent on this point.

*Labor Law §740*

Defendant's motion to dismiss plaintiff's Labor Law §740(2) claim is denied. That statute provides that

> An employer shall not take any retaliatory action against an employee, whether or not within the scope of the employee's job duties, because such employee does any of the following: (a) discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that the employee reasonably believes is in violation of law, rule or regulation or that the employee reasonably believes poses a substantial and specific danger to the public health or safety

(Labor Law §740).

Contrary to defendants' arguments, plaintiff's allegations that he raised concerns about BEP's misrepresentations to potential business partners sufficiently "identif[ies] the particular activities, policies or practices in which the employer allegedly engaged" (*Webb-Weber v Community Action for Human Services, Inc.*, 23 NY3d 448, 453 [2014]) and plaintiff has also alleged facts establishing a causal connection.

**151494/2023   IRRERA, EDOARDO vs. BERNSTEIN EQUITY PARTNERS, LLC ET AL**          **Page 8 of 11**
  **Motion No.  002**

8 of 11

[* 8]

Whether a causal nexus has been sufficiently pled for Labor Law §740 purposes is determined by applying the same analysis for a retaliation claim under the New York City or State Human Rights Laws (*see Senal v Lynch*, 217 AD3d 466, 467 [1st Dept 2023] [applying Human Rights Laws' causation analysis to Labor Law §740 claim]; *see generally Castro v City of New York*, 141 AD3d 456, 458-59 [1st Dept 2016] ["Labor Law §740 and the Human Rights law all have 'the goal of remediating adverse employment actions which, if allowed, would undermine an important public policy'"]). Accordingly, "[a] causal connection may be established either indirectly, by showing that the adverse closely followed in time the protected activity, or directly, through evidence of retaliatory animus, such as [oral] or written remarks" (*Thomas v Mintz*, 60 Misc 3d 1218(A) [Sup Ct, NY County 2018] [internal citations omitted], *affd as mod*, 182 AD3d 490 [1st Dept 2020]). In this case, the approximately eight months between plaintiff's conversation with Bernstein and his termination is insufficient, on its own, to establish a causal connection (*see e.g. Caputo v IESI NY Corp.*, 228 AD3d 480, 481 [1st Dept 2024] ["proximity of five months, without more, is not enough to create an issue of fact as to causation"]). However "[t]he absence of temporal proximity will not defeat the claim where … there are other facts supporting causation" (*Harrington v City of New York*, 157 AD3d 582, 586 [1st Dept 2018]), and plaintiff's allegations in his complaint and affidavit in opposition that during these eight months, Bernstein "requested" that he resign and, when he did not, hindered plaintiff's ability to do his job until he was fired based upon his ostensible inability to do his job support an inference that his termination was based upon retaliatory animus (*see Senal v Lynch*, 217 AD3d 466, 467 [1st Dept 2023] ["Although plaintiff was not terminated until almost three years after his complaint, he alleges that had worked at the residence for 18 years before his report, after which he was placed on administrative leave

**151494/2023   IRRERA, EDOARDO vs. BERNSTEIN EQUITY PARTNERS, LLC ET AL**      **Page 9 of 11**
  **Motion No.  002**

9 of 11

during the entirety of an investigation and ultimately terminated at the investigation's conclusion"]).

The motion to dismiss this claim as against Bernstein is also denied. Plaintiff's allegations that Bernstein was the sole owner of BEP, directed plaintiff's work, and fired plaintiff are sufficient to satisfy the "economic reality" test at this juncture (*see Harris v Structuretech New York, Inc.*, 191 AD3d 470 [1st Dept 2021]; *see also Bonito v Avalon Partners, Inc.*, 106 AD3d 625, 626 [1st Dept 2013]).

### *Labor Law §§190, 191 and 198*

However, defendants' motion is granted as to plaintiff's remaining Labor Law claims. Labor Law sections 190 or 198 do not provide a private right of action—Labor Law §190 defines various terms while Labor Law §198 "provides the remedies available to an employee who prevails under a substantive provision of Labor Law article 6" (*Frances v Klein*, 231 AD3d 535, 536 [1st Dept 2024] [internal citations omitted])—and Labor Law §191 is inapplicable.

That provision "guarantees timely payment" for four categories of employees: (1) manual workers; (2) railroad workers; (3) commission salespersons; and (4) clerical and other workers (Labor Law §191[1][a]-[d]) but none of these categories apply here. The only possible category in which plaintiff fits, "[c]lerical and other workers," is defined in Labor Law § 190(7) to include all employees who are not a manual worker, railroad worker, or commission salesperson, except those "employed in a bona fide executive, administrative or professional capacity whose earnings are in excess of [one thousand three hundred dollars] a week'" (*Tortorella v Postworks New York LLC*, 2011 NY Slip Op 32014[U] [Sup Ct, NY County 2011]). As plaintiff is a professional worker who indisputably earned well above this threshold, no claim under these provisions lies (*see e.g. Eden v. St. Luke's-Roosevelt Hosp. Center,* 96 A.D.3d 614, 615 [1st Dept 2012]). To the extent plaintiff

**151494/2023   IRRERA, EDOARDO vs. BERNSTEIN EQUITY PARTNERS, LLC ET AL**
**Motion No.  002**

**Page 10 of 11**

argues, in opposition, that the complaint states a Labor Law §193 claim, the Court declines plaintiff's implicit request to amend the complaint, sua sponte, to add this claim (*see Rosenberg v Home Box Off., Inc.*, 2006 NY Slip Op 30358(U) at *10 [Sup Ct, NY County, 2006] [a "plaintiff may not amend his complaint to add a new legal theory via statements in a memorandum of law in opposition to a pending dispositive motion"], *affd* 33 AD3d 550 [1st Dept 2006]).

Accordingly, it is

**ORDERED** that defendants' motion is granted to the extent that fourth cause of action (Labor Law §§190, 191, and 198) is dismissed in its entirety and the second cause of action (breach of contract) is dismissed as against Seth Bernstein, and is otherwise denied; and it is further

**ORDERED** that plaintiff shall, within ten days of the date of this decision and order, serve a copy of same, with notice of entry, upon defendants as well as upon the Clerk of the Court (60 Centre Street, Room 141B) and the Clerk of the General Clerk's Office (60 Centre Street, Room 119); and it is further

**ORDERED** that such service upon the Clerk of the Court and the Clerk of the General Clerk's Office shall be made in accordance with the procedures set forth in the *Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases* (accessible at the "EFiling" page on this court's website).

This constitutes the decision and order of the Court.

| | |
|---|---|
| **5/13/2025** | |
| **DATE** | **HON. JUDY H. KIM, J.S.C.** |

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|---|
| | | GRANTED | DENIED | X | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | REFERENCE |

**151494/2023   IRRERA, EDOARDO vs. BERNSTEIN EQUITY PARTNERS, LLC ET AL**          **Page 11 of 11**
**Motion No.  002**

11 of 11

[* 11]