(March 31, 2011)

■ KARL J. WACHTER, Appellant, v DOW KIM, Respondent. [920 NYS2d 66]—

Defendant, formerly a senior executive at Merrill Lynch, left that firm to establish his own hedge fund. He intended to operate his new fund through nonparties Diamond Lake Investment Group, L.P. (the Limited Partnership) and Diamond Lake GP LLC. The general partner of the Limited Partnership was nonparty DLIG LLC (DLIG), and defendant was the managing member of DLIG. Plaintiff was hired to serve as a managing director of the Limited Partnership and as its general counsel.

Also, plaintiff was made a limited partner of the Limited Partnership and a member of Diamond Lake GP LLC.

The essential rights and responsibilities of the parties with respect to plaintiff's employment by the Limited Partnership were stated in a term sheet. Central to this dispute is provision 10 of the term sheet, entitled "2007 and 2008 Guaranteed Cash Compensation." That provision provided that for the calendar year 2008, plaintiff would be paid "aggregate cash compensation" of at least $2,000,000. The "aggregate cash compensation" was comprised of four separate components delineated elsewhere in the term sheet. Those were (1) an annualized draw of $200,000, to be paid biweekly by the Limited Partnership; (2) a share of certain incentive compensation received by DLIG, (3) a share of management fees earned by the Limited Partnership; and (4) any bonus to be made to plaintiff in the sole discretion of the Limited Partnership. Provision 10 of the term sheet further provided that for 2007, plaintiff would be paid "not less than an amount equal to the 2008 Guaranteed Compensation prorated by the number of months you actually perform services . . . in 2007." It further stated that "[i]f the entire 2007 Guaranteed Compensation and/or 2008 Guaranteed Compensation cannot be paid solely through Draw, cash distributions from Your Percentage of Incentive Compensation, Management Fees and Discretionary Bonus, any shortfall shall be payable to you on or prior to March 15 of the subsequent calendar year."

Finally, provision 10 of the term sheet stated that plaintiff's compensation in 2007 and 2008 would be paid by "Diamond Lake." "Diamond Lake" was defined in the first paragraph of the term sheet, which read, in pertinent part, as follows: "The following is a restated term sheet (the 'Term Sheet') summarizing the principal terms of your relationship with [the Limited Partnership] and Diamond Lake GP LLC or such other entity as may serve as general partner to any Diamond Lake fund (the 'General Partner' and collectively with the [Limited Partnership] *and their respective affiliates* and affiliated funds, 'Diamond Lake') on the basis of which a definitive agreement or agreements (the 'Agreement') will be entered into between the [Limited Partnership] and you (emphasis added)." Defendant executed the term sheet in his capacity as the managing member of DLIG. The term "affiliate" was not defined in the term sheet.

Plaintiff began to work for the Limited Partnership in October 2007. However, in August 2008, defendant determined that he could not raise sufficient funds to make the venture viable, and he abandoned it. He informed all the employees, including plaintiff, that their services were no longer needed. Plaintiff

contends that, at that point, he was owed more than $2.3 million of the guaranteed compensation provided for in provision 10 of the term sheet. Plaintiff filed a complaint against defendant asserting, as is relevant to this appeal, a cause of action for breach of contract based on provision 10 of the term sheet. Plaintiff alleged that defendant was personally liable to him because defendant was an "affiliate" of the Limited Partnership and DLIG, and therefore was included within the definition of "Diamond Lake" and was responsible for compensating him.

Plaintiff also asserted a cause of action based on Labor Law § 193 (1) and § 198. He alleged that he was an "employee" within the meaning of Labor Law § 190 (2), that defendant was his employer, and that the minimum guaranteed cash compensation amounts were earnings for labor and services rendered to defendant. Therefore, plaintiff claimed, the unpaid compensation constituted "wages" within the meaning of Labor Law § 190 (1), and defendant's failure to pay the unpaid balances of the minimum guaranteed cash compensation was an unlawful deduction from wages within the meaning of Labor Law § 193.

Defendant moved to dismiss the complaint for failure to state a cause of action. He argued that he had no personal liability to plaintiff because he signed the term sheet strictly in his capacity as the managing member of DLIG. He further maintained that the term sheet could not reasonably be construed as providing that "Diamond Lake" included individual, as opposed to corporate, affiliates. Defendant further argued that, even if he was individually liable to plaintiff, he could not have violated the Labor Law because the balance of compensation allegedly owed to plaintiff was discretionary and incentive-based, and thus did not constitute "wages" within the statute's definition.

The court granted defendant's motion and dismissed the complaint in its entirety.* The court found that defendant is not personally liable under the term sheet as an "affiliate," because the first paragraph of the term sheet "plainly states that it sets forth the rights and obligations as to [plaintiff] and any other Diamond Lake entity that may serve as a 'general partner,' [but] makes no references to an individual's status as an affiliate." The court stated that "[t]o read into the Term Sheet that the parties intended [defendant], individually, to be regarded as an affiliate . . . would amount to re-writing the agreement under the guise of contract interpretation." The court further found that the unpaid compensation was incentive-based and thus not covered by the Labor Law.

---

* The complaint also asserted causes of action for breach of oral contract and promissory estoppel. Plaintiff does not appeal from the dismissal of those claims.

Plaintiff argues on appeal that the court erred because the term sheet does not unambiguously exclude defendant as an "affiliate" under the definition of the term "Diamond Lake." He contends that the court improperly focused on those parts of the term sheet's first paragraph that identify it as an agreement between plaintiff and an entity, and ignored the fact that "Diamond Lake," the obligor, is defined as including entities and their affiliates. He argues that a natural person such as defendant can be considered an "affiliate." Defendant answers that the court correctly construed the term sheet, because its first paragraph identifies the parties to the term sheet as plaintiff and "[the Limited Partnership] and Diamond Lake GP LLC or *such other entity as may serve as general partner* to any Diamond Lake fund . . . on the basis of which a definitive agreement or agreements (the 'Agreement') will be entered into between the [Limited Partnership] and you" (emphasis added).

As to his claims pursuant to Labor Law § 193 (1) and § 198, plaintiff argues that the court similarly elided critical language in the term sheet. He contends that the court emphasized the fact that certain of the pay components provided for in the term sheet were contingent or discretionary, and ignored other language that, in absolute terms, guaranteed plaintiff minimum compensation. Defendant responds that, for purposes of the Labor Law definition of "wages," the discretionary nature of the individual pay components overrides the guarantee of a lump sum.

We first consider whether plaintiff has stated a cause of action for breach of contract against defendant in his personal capacity. If so, we must then consider whether he has stated a cause of action against defendant for violation of the Labor Law. When interpreting a contract, we must consider the entire writing and not view particular words in isolation (*Matter of Westmoreland Coal Co. v Entech, Inc.*, 100 NY2d 352, 358 [2003]). For purposes of this appeal, the goal in interpreting the agreement is to ascertain whether plaintiff has a claim that defendant is personally obligated to pay him the minimum compensation he says is guaranteed by the term sheet. Further, on this appeal of the grant of a motion to dismiss pursuant to CPLR 3211, we are required to afford plaintiff the benefit of every possible favorable inference (*Leon v Martinez*, 84 NY2d 83, 87 [1994]).

Plaintiff's claim depends not on the status of the parties to the agreement, but rather on whether defendant falls within the definition of "Diamond Lake," the party that, pursuant to provision 10 of the term sheet, is obligated to pay plaintiff's

compensation. The operative language in this dispute is the definition of "Diamond Lake," which appears in the first paragraph of the term sheet, but which the court ignored. The term "Diamond Lake" does not necessarily represent a specific entity; rather, by the very terms of the term sheet, it represents the entity that acts as the general partner of the Limited Partnership, *in addition to* the Limited Partnership itself *and* those entities' "affiliates." Having determined that the definition of "Diamond Lake" is of paramount importance, we still must determine whether the definition unambiguously excludes the possibility that defendant is an "affiliate" or can reasonably be interpreted to embrace him as such. In doing so, we are guided by the principle that language in a contract is unambiguous if it has " 'a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion' " (*Greenfield v Philles Records*, 98 NY2d 562, 569 [2002], quoting *Breed v Insurance Co. of N. Am.*, 46 NY2d 351, 355 [1978]). Further, in deciding whether an agreement contains an ambiguity, we should: " 'consider the relation of the parties and the circumstances under which it was executed. Particular words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby' " (*Kass v Kass*, 91 NY2d 554, 566 [1998], quoting *Atwater & Co. v Panama R.R. Co.*, 246 NY 519, 524 [1927]).

The word "affiliate" is not commonly understood to apply only to entities. To the contrary, the word has been defined as "an affiliated *person* or organization" (Merriam-Webster's Collegiate Dictionary 21 [11th ed 2003] [emphasis added]). Thus, it cannot be said that defendant could not be considered an affiliate of the entities at issue herein. Moreover, the fact that the first paragraph of the term sheet referred to "Diamond Lake" as including "affiliates and affiliated *funds*" (emphasis added) bespeaks a possible intention to differentiate between entities and individuals. In addition, while the parties' intentions are as yet unclear, it cannot be said that, under the circumstances, the parties could not possibly have intended defendant to be considered an "affiliate." After all, defendant was not a mere functionary of the hedge fund. Rather, he was the impetus for the formation of the venture and the person upon whom its success or failure would depend. He was also the person who plaintiff could reasonably have assumed would fund his compensation until such time as the venture was self-sufficient.

Having considered the parties' arguments in light of the basic

precepts of contract interpretation outlined above, we conclude that the word "affiliate" as used in the term sheet is ambiguous as to whether individuals, such as defendant, are included in the definition of "Diamond Lake" and thus obligated to pay plaintiff the compensation promised in the term sheet. Accordingly, the court erred in dismissing plaintiff's breach of contract cause of action. We move on to whether plaintiff has stated a cause of action against defendant under the Labor Law.

We recognize that the Labor Law does not consider as "wages" subject to the statute "[d]iscretionary additional remuneration, as a share in a reward to all employees for the success of the employer's entrepreneurship" (*Truelove v Northeast Capital & Advisory*, 95 NY2d 220, 224 [2000]). It is also true that much of the compensation that the term sheet provides is to be paid to plaintiff can be characterized as contingent and discretionary. However, provision 10 of the term sheet overrides the discretionary nature of these individual pay components by stating, without qualification, that plaintiff *"shall* receive" (emphasis added) aggregate cash compensation of *not less than* $2,000,000 in 2008 and a prorated portion thereof in 2007. Moreover, the term sheet provides that if the various components of the pay package, including those that are discretionary and/or incentive-based, are insufficient to reach the "2007 Guaranteed Compensation" and "2008 Guaranteed Compensation," "any shortfall *shall* be payable" (emphasis added) to plaintiff by "Diamond Lake." This language indicates that the "2007 Guaranteed Compensation" and "2008 Guaranteed Compensation" are sums certain that "Diamond Lake" must pay to plaintiff and has no discretion not to pay. Accordingly, such compensation is "wages" that are protected by Labor Law § 193 (1) and § 198, and the court erred in dismissing plaintiff's claim under the statute.

We have considered defendant's remaining contentions and find them without merit. Concur—Gonzalez, P.J., Mazzarelli, Sweeny, Richter and Manzanet-Daniels, JJ.

