Hernandez Tech., Inc. v Rivera (2025 NY Slip Op 03474)

Hernandez Tech., Inc. v Rivera

2025 NY Slip Op 03474

Decided on June 6, 2025

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on June 6, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: LINDLEY, J.P., MONTOUR, OGDEN, GREENWOOD, AND NOWAK, JJ.

452 CA 23-01919

[*1]HERNANDEZ TECHNOLOGY, INC., DOING BUSINESS AS FIRST CAPITAL, PLAINTIFF-RESPONDENT,
v
BERNABE RIVERA, DEFENDANT-APPELLANT. 

RUPP PFALZGRAF LLC, ROCHESTER (KEVIN J. FEDERATION OF COUNSEL), FOR DEFENDANT-APPELLANT.
BOND SCHOENECK & KING, PLLC, ROCHESTER (LAURA A. MYERS OF COUNSEL), FOR PLAINTIFF-RESPONDENT.

 Appeal from an order of the Supreme Court, Monroe County (Daniel J. Doyle, J.), entered October 24, 2023. The order granted in part the motion of plaintiff for summary judgment and denied the cross-motion of defendant for summary judgment. 
It is hereby ORDERED that the order so appealed from is unanimously modified on the law by striking from the thirteenth ordering paragraph the date of August 28, 2014, and substituting therefor the date of March 20, 2014, and as modified the order is affirmed without costs.
Memorandum: Defendant was employed by plaintiff, Hernandez Technology, Inc., doing business as First Capital (First Capital), as a sales representative from October 2010 until he was terminated in June 2018. In February 2020, First Capital commenced this action alleging breach of contract, tortious interference with business relationships, and defamation, and seeking damages and a permanent injunction. In August 2020, defendant answered and asserted counterclaims for, inter alia, breach of contract and violations of various Labor Law provisions governing the payment of wages. First Capital moved for summary judgment on its causes of action for defamation and tortious interference and for summary judgment dismissing defendant's counterclaims. Defendant cross-moved for, inter alia, summary judgment dismissing certain causes of action and First Capital's statute of limitations affirmative defense and for summary judgment on certain counterclaims.
In appeal No. 1, defendant appeals from an order granting in part First Capital's motion and denying defendant's cross-motion. Supreme Court also agreed with First Capital that, should defendant establish a breach of contract or Labor Law violation, he was limited to the period between August 28, 2014 and May 13, 2015 for affirmative relief on those counterclaims. In appeal No. 2, First Capital appeals from an order granting its motion for leave to reargue its motion for summary judgment and, upon reargument, adhering to its prior determination and granting defendant leave to amend his answer.
Defendant entered into an employment agreement when he was hired by First Capital. The employment agreement contained non-compete, non-interference, and non-solicitation provisions. First Capital and defendant also entered into Compensation Agreements during defendant's employment. Under the 2013 Compensation Agreement, First Capital agreed to pay defendant monthly residuals "at a rate of 15% of the net income earned on each merchant account in agent's portfolio" and, in the 2015 Compensation Agreement, First Capital agreed to pay defendant "15% [r]esidual [i]ncome earned on existing portfolio." On May 13, 2015, a First Capital employee gave defendant an internal spreadsheet (spreadsheet), which defendant referred to as a "smoking gun," showing that First Capital reduced the revenue received from customers [*2]by 30% before calculating defendant's commission.
We reject defendant's contention in appeal No. 1 that the court erred in denying that part of his cross-motion seeking summary judgment on his counterclaims for breach of contract and violations of Labor Law §§ 193 and 198. Defendant contends that he submitted evidence establishing that First Capital took a "30% keep" of his commissions and therefore breached the Compensation Agreements and violated Labor Law §§ 193 and 198. Labor Law § 193 (1) prohibits employers from making any deductions from the wages of an employee except in limited circumstances. Where the employee succeeds on a Labor Law wage claim, the employee is entitled to an award of attorney's fees and possible liquidated damages, as defendant sought in his counterclaim under Labor Law § 198 (see § 198 [1-a]). Although we agree with defendant that he established as a matter of law that First Capital retained 30% of income from the merchants in defendant's portfolio before paying defendant's commission, there is an issue of fact whether First Capital violated the Compensation Agreements, and therefore the Labor Law provisions, by doing so. In particular, "net income" and "[r]esidual [i]ncome" are not defined in the Compensation Agreements, and defendant failed to establish that his construction "is the only one that can be fairly placed upon" the agreements (Dan's Hauling & Demo, Inc. v GMMM Hickling, LLC, 193 AD3d 1404, 1407 [4th Dept 2021]).
Likewise, we reject First Capital's contention in appeal No. 2 that the court erred in denying that part of its motion seeking summary judgment dismissing the Labor Law § 193 counterclaim. Although not entirely clear, First Capital appears to argue that, because there is a dispute whether it owed defendant any additional commissions or whether the commissions were improperly calculated, there is no actionable claim under Labor Law § 193. As noted above, Labor Law § 193 (1) prohibits employers from making any deductions from the wages of an employee except in limited circumstances, and wages are defined as "the earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis" (§ 190 [1] [emphasis added]). As First Capital concedes, there is no dispute that defendant is entitled to commissions for sales he generated for First Capital. Such commissions were " 'vested and mandatory as opposed to discretionary and forfeitable' " (Zinno v Frank J. Schlehr, M.D., P.C., 175 AD3d 843, 844 [4th Dept 2019]; see Wachter v Kim, 82 AD3d 658, 663 [1st Dept 2011]), and thus such commissions are considered wages under section 190 (see Pachter v Bernard Hodes Group, Inc., 10 NY3d 609, 616-617 [2008], rearg denied 11 NY3d 751 [2008]; see generally Ryan v Kellogg Partners Inst. Servs., 19 NY3d 1, 16 [2012]). First Capital failed to meet its burden of establishing that it did not make improper deductions from the commissions. While First Capital is correct that parties may agree "that the computation of a commission will include certain downward adjustments from gross sales, billings or receivables" (Pachter, 10 NY3d at 617), First Capital failed to establish as a matter of law that the parties agreed that defendant's commissions would be calculated after a 30% keep.
We further reject First Capital's contention in appeal No. 2 that the court erred in denying that part of its motion seeking summary judgment dismissing the Labor Law § 198 counterclaim. In 2021, the legislature enacted the No Wage Theft Loophole Act (Act), which amended Labor Law §§ 193 and 198 by including provisions that "[t]here is no exception to liability under [those] section[s] for the unauthorized failure to pay wages, benefits or wage supplements" (§ 193 [5]; § 198 [3]). Prior to the enactment of the Act, courts had held that Labor Law § 198 was not a substantive provision but merely provided the remedies available to a prevailing employee (see Gottlieb v Kenneth D. Laub & Co., 82 NY2d 457, 464 [1993], rearg denied 83 NY2d 801 [1994]; Salahuddin v Craver, 163 AD3d 1508, 1510-1511 [4th Dept 2018]). There is no dispute by the parties that section 198 now allows for a standalone cause of action to employees seeking relief. Inasmuch as the conduct alleged in defendant's counterclaims occurred before the effective date of the Act, the question is whether the Act should be applied retroactively. We conclude that it should be applied retroactively consistent with the legislature's intent, and we therefore depart from the First Department, which has held otherwise (see Frances v Klein, 231 AD3d 535, 536 [1st Dept 2024]; Kanthan v Tagstone Tech., LLC, 224 AD3d 593, 593 [1st Dept 2024]; Raparthi v Clark, 214 AD3d 613, 613-614 [1st Dept 2023]).
"Statutes are generally applied prospectively in the absence of express or necessarily implied language allowing retroactive effect" (Dorfman v Leidner, 76 NY2d 956, 959 [1990]; see Matter of Gleason [Michael Vee, Ltd.], 96 NY2d 117, 122 [2001]). "[R]etroactive operation is [*3]not favored by the courts and statutes will not be given such construction unless the language expressly or by necessary implication requires it" (Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 584 [1998]; see Gottwald v Sebert, 40 NY3d 240, 258 [2023]). "However, remedial legislation should be given retroactive effect in order to effectuate its beneficial purpose" (Gleason, 96 NY2d at 122). Factors to consider in determining whether a statute should be applied retroactively include "whether the [l]egislature had made a specific pronouncement about retroactive effect or conveyed a sense of urgency; whether the statute was designed to rewrite an unintended judicial interpretation; and whether the enactment itself reaffirms a legislative judgment about what the law in question should be" (id.; see Brothers v Florence, 95 NY2d 290, 299 [2000]).
The legislature stated that the Act "shall take effect immediately" (L 2021, ch 397, § 5), which, although "not alone determinative, . . . does evince[ ] a sense of urgency" (Brothers, 95 NY2d at 299 [internal quotation marks omitted]). In addition, the legislature specifically characterized the Act as a "remedial amendment" (L 2021, ch 397, § 1), and the stated purpose of the Act was to "clarify that Article 6 of New York's Labor Law completely and without exception prohibits lack of distribution of earned wages" (Senate Introducer's Mem in Support of 2021 NY Senate Bill S858). The legislature stated that "the statute [has been] often interpreted extremely narrowly by courts who misconstrue or overlook its rights-affirming language" (id.). The legislature noted in particular the decision in Gottlieb that held that Labor Law § 198 was not a "substantive" provision and stated that it passed the Act "to clarify that wage theft is, and has always been, completely prohibited" (Senate Introducer's Mem in Support of 2021 NY Senate Bill S858). Thus, the legislative history shows that the purpose of the Act was to "clarify what the law was always meant to say and do" (Majewski, 91 NY2d at 585), which, in this case, was for section 198 to be a substantive provision aimed at preventing improper deductions from employee's wages and to "remediate the impact of [the] Court's decision[ ]" in Gottlieb (Brothers, 95 NY2d at 300). We therefore conclude that the remedial legislation "should be given retroactive effect in order to effectuate its beneficial purpose" (Gleason, 96 NY2d at 122; see People ex rel. Forshey v John, 75 AD3d 1100, 1101 [4th Dept 2019).
Addressing next defendant's contention with respect to appeal No. 1 that the court erred in denying that part of his cross-motion seeking summary judgment on his Labor Law § 195 counterclaim, we reject that contention. That statute requires employers to provide employees with a statement with every payment of wages setting forth, inter alia, the "rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; [and] deductions" (§ 195 [3]). It further provides that, upon the request of an employee, "an employer shall furnish an explanation in writing of how such wages were computed" (id.). Defendant contends that the monthly reports he received from First Capital did not state the basis of the commissions and were therefore in violation of section 195. Those statements, however, showed that First Capital paid defendant a commission, and thus First Capital complied with the statute. Contrary to defendant's contention, First Capital was not required to include all the information needed for defendant to personally calculate his commission. Regarding defendant's contention that First Capital should have listed the 30% keep as a deduction, there is a triable issue of fact whether the 30% keep constituted a deduction.
Defendant next contends in appeal No. 1 that the court erred in limiting the time period from which he could recover unpaid wages. We agree in part. The court denied that part of defendant's cross-motion seeking summary judgment dismissing First Capital's affirmative defense of the statute of limitations and agreed with First Capital that defendant could recover affirmative damages for any breach of contract or Labor Law violation that occurred only between August 28, 2014 to May 13, 2015. We reject defendant's contention that the six-year statute of limitations for breach of contract (see CPLR 213 [2]) did not accrue until after he received the May 13, 2015 spreadsheet and discovered the 30% keep. That cause of action accrued upon the alleged breach by First Capital (see Ely-Cruikshank Co. v Bank of Montreal, 81 NY2d 399, 402 [1993]), regardless of whether defendant was unaware of the breach at the time it occurred (see Marrow v Brighthouse Life Ins. Co. of NY, 200 AD3d 1622, 1623 [4th Dept 2021]; Brooks v AXA Advisors, LLC [appeal No. 2], 104 AD3d 1178, 1180 [4th Dept 2013], lv denied 21 NY3d 858 [2013]). Defendant's reliance on CPLR 203 (g) (1) is misplaced inasmuch as it applies only "where the time within which an action must be commenced is computed from the time when facts were discovered or . . . could with reasonable diligence have been discovered," neither of which applies here. Defendant's " '[k]nowledge of the occurrence of the wrong . . . is [*4]not necessary to start the [s]tatute of [l]imitations running in [a] contract [action]' " (Ely-Cruikshank Co., 81 NY2d at 403).
Here, defendant filed his answer with the counterclaims on August 27, 2020, meaning that, pursuant to the six-year statute of limitations for the breach of contract (see CPLR 213 [2]) and Labor Law counterclaims (see Labor Law § 198 [3]), any counterclaims that accrued prior to August 27, 2014 would be time-barred. We agree with defendant, however, that the court failed to account for the fact that the statute of limitations was tolled pursuant to executive orders issued during the COVID-19 pandemic (see generally State of New York v Williams, 224 AD3d 1356, 1357 [4th Dept 2024]; Harden v Weinraub, 221 AD3d 1460, 1461-1462 [4th Dept 2023]). We therefore conclude that defendant may recover affirmative damages for any breach that occurred dating back to March 20, 2014, and we therefore modify the order in appeal No. 1 accordingly.
We reject defendant's further contention that the court erred in determining that First Capital's alleged liability for the breach of contract and Labor Law causes of action ended on May 13, 2015, the day defendant obtained the spreadsheet. Where, as here, defendant was an employee at will, First Capital was entitled to prospectively change the terms of an employment agreement (see Gertler v Davidoff Hutcher & Citron LLP, 186 AD3d 801, 805-806 [2d Dept 2020]; Gebhardt v Time Warner Entertainment-Advance/Newhouse, 284 AD2d 978, 979 [4th Dept 2001]). Even if First Capital did not "change" the terms of the Compensation Agreements, when defendant remained in First Capital's employment after being notified of the way commissions were calculated, he was deemed to have agreed to that method of calculating commissions (see Gertler, 186 AD3d at 806-807; Gebhardt, 284 AD2d at 979; Bottini v Lewis & Judge Co., 211 AD2d 1006, 1007-1008 [3d Dept 1995]).
Defendant further contends in appeal No. 1 that the court erred in denying that part of his cross-motion seeking summary judgment dismissing plaintiff's causes of action for breach of contract. We reject that contention. After finding that the covenant not to compete was invalid because it was overbroad, the court held that the non-interference and non-solicitation provisions were severable and partially enforceable as to those customers of First Capital developed by defendant while he was employed by First Capital. A restrictive covenant is enforceable if it "(1) is no greater than is required for the protection of the legitimate interest of the employer, (2) does not impose undue hardship on the employee, and (3) is not injurious to the public" (BDO Seidman v Hirshberg, 93 NY2d 382, 388-389 [1999]). "Protection of customer relationships the employee acquired in the course of employment may indeed be a legitimate interest" (id. at 391; see generally Gundermann & Gundermann Ins. v Brassill, 46 AD3d 615, 616 [2d Dept 2007]). A restrictive covenant that is overly broad may be partially enforced to the extent necessary to protect the employer's legitimate interest (see BDO Seidman, 93 NY2d at 394; Perella Weinberg Partners LLC v Kramer, 230 AD3d 451, 452 [1st Dept 2024]; Malcolm Pirnie, Inc. v Werthman, 280 AD2d 934, 935 [4th Dept 2001]). Here, the court weighed the appropriate factors (see BDO Seidman, 93 NY2d at 394), and we conclude that it did not err in determining that paragraphs six and seven of the employment agreement were partially enforceable.
We have considered the parties' remaining contentions in appeal Nos. 1 and 2 and conclude that they are without merit.
Entered: June 6, 2025
Ann Dillon Flynn
Clerk of the Court